BROWN v. THOMSON.

1. A married woman is responsible for articles purchased by her for the use of a plantation which was her separate estate, and judgment therefor may be entered against her.
2. But a married woman cannot be held liable, in an action at law, for goods purchased by her for the use of herself and family, even though the sale was made on the faith of her pledge of her individual credit.

Before HUDSON, J., Spartanburg, September, 1886.

This was an action by John J. Brown against Jessie M. Thomson, commenced January 13, 1886, on an account for goods sold in the years 1883 and 1884. A bill of particulars was served, giving items of account, some of which appeared to have been delivered to the husband of the defendant, and some to her children. The answer alleged want of knowledge of the facts, payments made, and that at the time of the alleged purchases, and now, the defendant was and is a married woman. The cause came on for trial before Judge Hudson and a jury. The plaintiff proved the account in the usual way; that he had dealings with defendant prior to 1884, and ever since; that defendant settled her account for 1883, except about 4 or 6 dollars; knew she was a married woman, and the credit was given to her; refused credit to her husband, because heard that all the property was in her hands— she said she wanted the goods, some for the plantation and some, I suppose, for her house; her husband, W. W. Thomson, got some of the items—I have an order recognizing what he got; except for the bacon and ploughs, a good deal of the account is for family supplies; bacon and flour is the principal part; a good deal of the account, no doubt, for family supplies; I don't know

what she did with it; I did not ask her when she got it, whether it was going to the plantation or the house; she bought many of the things herself; was there in store very often; her husband got a good many things charged to her; she recognized it; her children got too; her plantation was in York County; she wrote me a letter of which the following is a copy:

"MAJOR BROWN: Some time since I received your note, and have not felt able to answer it till now. I want to say, Major, in confidence and not boasting, but as a matter of business, that I own property in York County to the value of $30,000, and there is not a lawyer there who will not tell you that my name stands high financially, and, moreover, the most moderate judges place our growing crop at one hundred and fifty bales as a low figure, and as certain of that, with no natural disaster. Mr. R. Thompson, who is always moderate and safe in his estimates, places our crop as above, while many go over this. I state this to show our ability to meet our obligations, and I now wish to say that I propose to settle fairly and to your satisfaction every dollar due you, and to make the proper difference between cash and time prices, on account of our disappointment in not paying you, caused by our not getting money firmly promised. Mr. Thomson says we ought to pay the time price, and when we settle you will be perfectly satisfied, as we will charge our tenants the same you charge us, and it will not be our paying it really. We have traded with you and got along so friendly, and you can rest perfectly assured that our settlement this fall will be prompt and satisfactory. We prefer trading with you, as we stated, although we shall want but little. One of our tenants is here now, and wants fifty pounds of bacon, which I should like to get from you. Please state what you will charge for this, payable Nov. 1st. Hoping that what I have written will prove satisfactory, I remain, very respectfully, (Signed) Mrs. J. M. Thomson. July 12, 1884."

The witness proceeded: "I know of no property that her husband owns; he does nothing that I know of but attend to his wife's business; he is a lawyer; I had refused to sell her unless she paid time prices; she knew that items in account of 1883

were charged to her—she paid it; I credited her for what she wanted after I got this letter," &c.

T. H. Littlejohn testified that items in the account, to the amount of $168.50, were for the plantation, and hardware for the house.

The defendant offered no evidence, but made certain requests to charge, which are all noticed in the charge of the judge, which was full and clear, and was as follows:

Gentlemen of the Jury: This case presents a very interesting question, and one of vital importance to the community. The action is by the plaintiff, J. J. Brown, a merchant, against Jessie M. Thomson, upon a mercantile account, a store account, goods sold and delivered and charged to her. He seeks to hold her personally liable for the amount, and upon this personal liability as a married woman hangs principally the determination of this case. The law in South Carolina touching the power, the capacity, and the liability of a married woman is found in sections 2036 and 2037 of the General Statutes. That is the law governing this case. There is no question that a married woman has the right to purchase any species of property in her own name, just as much so as if she were unmarried, and the right to purchase necessarily carries with it the right to pay the cash, or purchase on credit, and give a valid obligation for the payment of the purchase money. If she had not the right to buy on a credit, giving her personal obligation therefor, which could be enforced upon her in a court of law, her power to purchase would be greatly curtailed. And the legislature has left it unlimited, and the power to purchase any species of property necessarily carries with it the power to give a valid obligation to pay the purchase money, upon which obligation she can be sued in a court of law, and judgment recovered against her.

In addition to this power of purchase, she has a right to contract and be contracted with, as to her separate property. She can make a contract in reference to that separate property and can bind herself personally when the contract has reference to that personal property just as if she were unmarried. That is the statute. Now the question, therefore, is: did this married lady purchase the goods sold and delivered in this store account

upon which the action has been brought? Did she make the purchases? We have nothing but the evidence introduced by the plaintiff. The defendant introduces no evidence. * * *

Now the question is, first and foremost, it is at the foundation of the whole of it: was this account contracted by this married lady? If the account was contracted by her, if the purchases were made by her, either in person or by her servants as her agents, or by the members of her family as her agents, she having knowledge of it and constituting them her agents to make the purchase; I say, if that was the case, then it was her contract; and in so far as the articles were purchased which went to the use of her plantation, unquestionably the articles were for the benefit of her separate estate, whether it was to pay hands their wages, or whether it was to purchase implements and material for repairing about the plantation or about her real estate in the city of Gaffney, that would be unquestionably for the benefit directly of her separate estate. It would be a contract as to her separate property, and for the benefit of it, because otherwise a married lady owning large property would be helpless; she would be without credit, if she could not go and buy on a credit for the benefit of that plantation for the purpose of keeping it up, perhaps of "running it," to use a popular phrase. The plantation would be comparatively worthless to her.

And, furthermore, there are many cases in the land where most excellent men and good managers are not the owners of property, but they have wives who do have property. Now, that husband is primarily liable for the support of his wife and children, and the wife cannot be made liable for the support of herself and children without a contract of her own to that effect. The husband may be an excellent manager, managing the separate property of his wife judiciously, most satisfactorily, yet being himself without tangible property, he has no credit. And if the support of his wife and children depended alone upon his credit, why, they might in many cases suffer, whereas the only fault that he has is that he is not the owner of separate property and has not credit. Now, in such a case as that, can the wife come to the rescue, and can she contract and make herself and her separate property liable by contract for the benefit of

herself, the support and maintenance of herself and her children, her family generally, even including her husband?

I must take a plain, practical, common sense view of this statute. A great deal of learning has been displayed by the courts of the different States in the Union upon these statutes in regard to married women's property. I propose to take the same view of that act as is taken in this New York case, which has been cited to you, which I think is eminently sound, practical, and full of good sense, and that is, if the wife goes and makes the contract (that is the fundamental question), whether she does it in express words or not—if, I mean, she makes a contract in the legal sense of the word, if she goes and makes a contract, if she has a merchant to sell the articles and charge them to her, and if she promises to pay for them, and those articles are for the support of herself and her children, I say under this act that she then has purchased goods for which she is personally liable. The law gives her a perfect right to purchase. If the husband is an invalid and has no means, the wife has a right to come forward and make a contract of that kind, make purchases for the benefit of herself and children, and give an obligation to pay for those purchases. She is not bound, she is not tied; her hands are not tied so as to render her unable to support herself and family, but the law here is broad enough. The only thing in all these questions that we must look carefully at is, "Is it a contract of the married woman?" If it be a contract, and a contract of purchase, she is responsible, if it is by her. If it be a contract having reference as to and for the benefit of her separate estate, she is personally liable, for the statute says so.

The language here of this case I will adopt in my charge to you. "Out of this right to purchase inevitably flows her liability for the price. That right was broadly given without limit or restriction, and intended to be completely and beneficially given. It was not narrowed to a purchase for cash or a consideration paid down in full, but she was at liberty to purchase as freely as a man might purchase, and on credit, if she should so choose. That involves her personal liability; without that credit is impossible—without that we should be held to the absurd proposition that the wife might buy, but should not be bound to pay, and as

a practical consequence we should restrict her right to purchase, which the statute gives fully and without restriction."

Now, I am asked by the defendant's counsel to charge you the following propositions. The first proposition is as follows: "The onus of proof is on the plaintiff to show that the contract sued upon relates to or concerns her separate property." I charge you that that is correct. The plaintiff must prove either that it was a purchase made by her, or that if it was not a contract to purchase, it was nevertheless a contract having reference to, relating to, her separate property.

"Second. Household supplies purchased by a married woman do not constitute such a debt as can bind a married woman in a suit at law." I decline to charge you that proposition. I contend that she can buy household supplies just as well as she can buy land.

The next proposition is: "The purchase of goods by a married woman for tenants on her place is not such a contract as will bind a married woman in a suit at law." I decline to charge that proposition, but charge you just the contrary, that she can buy supplies for her plantation, she can make contracts for the payments of wages of her hands, and that supplies and goods bought by her for the support and maintenance of her plantation are valid contracts, for which she is personally liable.

The next proposition: "Nothing can be found against a defendant if she is a married woman and did not contract as to her separate estate." That is a correct proposition, if we add thereto, "or did not make the purchase of the goods." If she purchased the goods, she is liable. But the proposition is, as it stands here, correct. Every contract for which she is to be liable, must be a contract as to her separate property, if it relates to property at all. But her straight out and out purchases she is liable for.

"In this case, in no view of the testimony in the case, can the jury find a verdict for more than $170." "Under the testimony here the verdict must be for the defendant." I cannot charge you that proposition, but, on the contrary, I charge you again that for whatever amount of these goods that were bought for the benefit of her separate property, she is liable; bought by her, the contract must be by her, either in person or by an agent, and

then she is liable for the balance, whatever went to the support of herself and children, if she herself made the contract either in person or by agent, and it was credited to her.

The next proposition: "Contracts such as have been testified to in this case will not bind the separate estate of a married woman." That I refuse. Now, don't misunderstand me. A married lady going to a store and buying goods, does not by that means imply a contract that she is to be responsible—not at all. But, on the other hand, the implication is that the husband is responsible, because every husband is primarily responsible for the support of his family. So that the married ladies, when they go about here in these stores and buy goods, everything is charged to their husbands, unless there is a special contract with that married lady. But if the merchant does not give credit and will not give credit to the husband, and makes a special contract with that married lady for all her purchases, extends the credit to her with the distinct understanding with her, then she is liable. That is the law as I take it to be. Now, in this case it is for you to say whether the merchant here dealt with Mrs. Thomson and gave credit to her with her knowledge and with her consent, or did he give credit to the husband and then afterwards charge the wife, or did the wife know nothing about it. To bind her it must be that he gave credit to her, she knew, consented to it, asked for it.

The amount of the account seems not to be disputed. I understand that the account has been testified to in such a way as to prove it. The complaint, which will be handed to you, shows what the account is. No interest runs on this account. So that if you see that these are purchases fairly and squarely made by this lady, credit being given her, why she is liable, not only for those things which went to the support of her plantation, but which went to the support of herself and children. If they were not made by her, and the husband was the one whom the merchant dealt with and gave credit to him, you can't charge the wife.

Take the record. If you find for the plaintiff, find the amount which has been proved to be due. If you find for the defendant, say, "We find for the defendant."

The jury found for the plaintiff his whole account, $366.95,

and the defendant appealed to this court upon the following exceptions:

"1. In refusing to charge that household supplies purchased by a married woman do not constitute such a debt as can bind a married woman in a suit at law.

"2. In refusing to charge that 'the purchase of goods by a married woman for tenants on her place is not such a contract as will bind a married woman in a suit at law.'

"3. In refusing to charge that 'in this case, under no view of the testimony, can there be a verdict for more than $170.'

"4. In refusing to charge that 'under the testimony the verdict must be for the defendant.'

"5. In refusing to charge that 'contracts such as the one in this case will not bind the separate estate of a married woman.

"6. In charging that the right to purchase conferred by the statute upon married women carries with it the right to purchase on credit and give a valid obligation for the payment of the purchase money.

"7. In charging that upon such obligation she can be sued in a court of law and judgment recovered against her.

"8. In charging that 'the question is therefore—did this married woman purchase the goods sold and delivered in this store account, upon which this action has been brought?'

"9. In charging in reference to matters of fact—as to what was the contract made by defendant, and as to defendant obtaining all the goods charged, and that all the items charged were purchases made on her account.

"10. In charging that in so far as the articles were purchased which went to the use of her plantation, they were for the benefit of the separate estate of defendant.

"11. In charging that if the wife makes a contract, whether in express words or not—if she had the merchant to sell the articles and charge them to her, and she promises to pay for them, and these articles are for the support of herself and children, then she has purchased goods for which she is personally liable.

"12. In refusing to charge that 'nothing can be found against a defendant if she is a married woman, and did not contract as to her separate estate.'

"13. In charging that on a contract made by a married woman, either in person or by agent, she is liable for whatever went to the support of herself and children, and it was credited to her.

"14. In charging that if the merchant does not give credit to the husband, and makes a special contract with that married lady for all her purchases—extends the credit to her with the distinct understanding with her, then she is liable."

*Mr. J. S. R. Thomson*, for appellant.

*Mr. Ralph K. Carson*, contra.

November 29, 1887. The opinion of the court was delivered by

Mr. Chief Justice Simpson. The action below was brought on an open account, alleged to have been contracted by the defendant with the plaintiff for certain goods, wares, and merchandise furnished by plaintiff to said defendant. The account may be divided into two parts, the first, embracing certain articles for the use of the defendant, her husband and her children, and the household ; the second, certain articles for the use of the separate estate of the defendant. His honor, the Circuit Judge, charged that if the defendant induced the plaintiff to sell the articles mentioned on her credit, and the credit of her separate estate, that then she and her separate estate were responsible as well for the articles purchased for the support of herself, husband, and children, as for those which she sent directly to her plantation.

We concur in so much of his charge as held the defendant responsible for the articles sent to her plantation, and if nothing more was embraced in the judgment below, it should be affirmed. But we do not concur in the other portion of the charge, which held the defendant responsible in this action for those articles used by herself and family. And the action below being an action at law, the judgment below cannot be modified so as to affirm it only in part. It must be reversed and remanded for a new trial, so that the account for the supplies furnished the separate estate, disencumbered of the other portion of the account, may be recovered. And to that end,

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case remanded for a new trial, without prejudice, however, to plaintiff's right to institute proper proceedings to subject the income of defendant's separate estate to the payment of the other portion of the account embracing the articles used by the defendant and her family, should he be advised that the facts of the case may warrant such proceeding.

MR. JUSTICE McIVER concurred.

MR. JUSTICE McGOWAN *dissenting* (omitting his statement of the case, which has already been given). Some of the exceptions misconceive the charge of the judge, which should be set out at length in the report of the case. As we gather it, the exceptions may be condensed into the allegation of error in charging "that if the wife made the contract, whether in express words or not, if she induced the merchant to sell the articles to her, not as agent of her husband, but in her own right, to be paid for out of her estate, and the credit was clearly given on the faith of her property, then she and her separate estate are liable, as well for the articles purchased for the support of herself and children as for those which she sent directly to her plantation," &c. We must assume that the verdict of the jury, as we think, in accordance with the evidence, established the facts that Mrs. Thomson purchased the goods on her own account, to be paid for out of her separate estate, of which she gave information to the plaintiff, who extended the credit to her on the faith of that property.

It must be confessed that there is some confusion in our law as to the power of a married woman to control her separate property, or charge the same by her engagements; and in the hope of making what we say upon the subject intelligible, we will go back a little. Prior to our present constitution a married woman, as to the right to hold property in her own name as against the marital rights of her husband, was still under the disabilities of the common law. But a system had been built up in the Court of Chancery, on the doctrine of trusts, by which property could be conveyed by deed to one *sui juris*, which deed might at the same time declare in favor of the wife such equitable interests as the donor might desire. This creation of a substantial

interest in the wife, separate from that of her husband, necessarily raised the question as to what control, notwithstanding the marital rights, she should have over that property. In England, after much debate, it was settled that a married woman, as to her separate estate, was a *feme sole*, with the absolute *jus disponendi*, unless the deed restrained her. Most of the American States followed this rule, but our State led the way in adopting precisely the opposite view, viz., that she had no right to contract as to her separate estate, except in so far as it was given by the instrument creating the estate.

Under the operation of this rigid rule it was soon perceived to be impracticable to give the wife the satisfactory enjoyment of her property, without any control over it, even for necessary repairs and the preservation of the property itself; and therefore when there were no express powers given in the deed, the courts were under the necessity of implying certain powers as inherent in the very ownership itself of property. As, for example, in the case of *Clark* v. *Makenna* (*Cheves Eq.*, 163—as late as 1840), Chancellor David Johnson, with the full concurrence of Chancellors Job Johnston and Harper, said: "If a marriage settlement or other agreement conferring on the wife a separate estate, clothes her with the power of contracting debts and charging her separate estate with their payment, I presume there could be no question about her authority; so that in every case the question is whether the power is expressly or impliedly given. If the question were now open, I should strongly incline to the opinion that it ought to be implied, in all cases, to the extent of the wife's dominion over the estate—to the *corpus* of the estate, if that was subject to her control, and to the income only, if her powers were limited to that. In the case in hand, the power of contracting debts, and thereby charging her estate with the payment, appears to me to be expressly reserved to the wife in this marriage settlement. * * * Now, the power to contract debts, it is true, is not expressly given, but it is necessarily implied by the covenant that her separate estate should be liable for them," &c.

Such was the condition of our law as to the perplexing question of the wife's separate estate in equity, down to 1868, when the constitution was adopted, and soon after the act of 1870,

which was amended in 1882; so that the written law of the State now is as follows: The Constitution, section 8, article XIV., declares, "The real and personal estate of a woman, held at the time of her marriage, or that she may thereafter acquire either by gift, grant, inheritance, devise or otherwise, shall not be subject to levy and sale for her husband's debts, but shall be held as her separate property, and may be bequeathed, devised, or alienated by her the same as if she were unmarried." And the General Statutes provides: "Section 2037. A married woman shall have the right to purchase any species of property in her own name, and to take proper legal conveyances therefor, and to contract and be contracted with as to her separate property in the same manner as if she were unmarried." These were certainly fundamental changes, and it is quite manifest that they were not intended to abridge, but rather to enlarge the powers of a married woman over her separate estate. Her right to acquire and hold being increased, so was her power of disposal. All the authorities agree that these provisions effected at least two things: first, dispensing with the necessity of a trustee, the separate estate is made legal instead of equitable; and, second, instead of leaving no power to contract, every married woman having a separate estate, now has attached to it the powers to alienate it, and to contract and be contracted with in relation to that separate estate as if she were unmarried.

In the case before us, it does not appear how or when the separate estate of the defendant was created, or what powers, if any, were attached to it. We only know from the defendant's letter to the plaintiff, when she was urging her claims to obtain credit, that she had a handsome estate in York County, which her husband, who, as it seems, has no tangible property of his own, superintended as her agent. In this state of facts we must suppose that Mrs. Thomson had a statutory separate estate, and, therefore, had the legal title and the right to make contracts respecting that property. She did apply to the plaintiff for credit, giving full information as to her property, and the plaintiff, who had refused to credit the husband, extended her credit on the faith of that property. Was that not a contract "as to her separate estate"? It was substantially admitted that the plain-

tiff was entitled to $168.50 of his account, for the articles such as corn and bacon, which were probably intended for the defendant's plantation, on the ground, as stated, that the contract *quoad* these articles, was in reference to her estate ; but it was claimed that as to the other articles of family supplies, &c., the contract was not "in respect to her separate estate." I am unable to see the distinction indicated. The contract was a unity, and how could its character, as to being or not being in reference to her estate, be determined by the use she might make of the articles purchased—half for one purpose and half for another? The fact is, her contract had no necessary connection with the use she was to make of the articles, as to which she might be silent, or deceive the seller. The seeming confusion has, no doubt, grown out of the phrase formerly much used, "for the benefit of the separate estate," which had its origin in the doctrine of the equity of the creditor (when the married woman could not contract at all), which gave to the creditor who had made advances for the benefit of the separate property, reimbursement out of that property. If the express power given to contact as to the separate estate, must be construed as identical with this equity of an advancing creditor, then the new power only increases the confusion and accomplishes nothing whatever.

But if the equity of the advancing creditor were now the only law upon the subject, we incline to think that the plaintiff was entitled to be reimbursed his whole account, including the supplies for the defendant's family, as well as for her plantation. Chancellor Harper, in *Magwood* v. *Johnson* (1 *Hill Ch.*, 232), states the doctrine thus : "The equity on which a creditor comes into this court to render a trust estate liable to the payment of his debt, is this, that he has advanced his money or given credit to effect the objects of the trust, and having accomplished the objects of the trust at his own expense, he has a right to be put in the place of the *cestui que trust*, or to be reimbursed out of the trust fund." Now, we cannot agree that the only object of a separate estate in a married woman is to perpetuate and preserve itself, even though the owner thereof should not have the means of support. We rather suppose that one of the objects, indeed the main and primary object, is to give the married woman the

use of it, at least the rents and profits, for the purpose, notwithstanding the misfortunes or improvidence of the husband, of securing to her and her children at all events and under all circumstances a support according to their conditions in life ; and, therefore, a creditor who gives such support, comes within the rule as to extending credit to effect the objects of the trust.

It is true that, as a rule, the husband is still bound to support his wife, although her property does not pass to him under his marital rights, as it did when the rule was established. But there are exceptional cases, as where the husband, as in this case, has no property or is unable to support his family. In such case the law neither requires them to starve nor to impose upon their creditors. As was said in the case of *Magwood* v. *Johnson,* above cited, "A husband, if he be of ability, is bound to support his wife and family, though they may have property of their own. But there may be cases where the husband is not of ability. He may be embarrassed or without property, and the wife may be compelled to support herself out of her separate estate. And she might be subjected to the greatest distress if she could not obtain the means of support on the credit of her separate estate. * * * How far have our courts departed from the English doctrines ? Thus far—that the wife should not by her own act merely charge her separate estate [it is different now]. The court will look into the necessity and propriety of the charge. But it still must appear that the credit was given to the wife, and not the husband," &c. The whole doctrine is condensed by Mr. Kelly as follows : "Now, under both rules (English and American) contracts which are necessary and proper to enable a married woman to hold and enjoy her separate estate created by statute, such as contracts for needed improvements or repairs of the separate estate, contracts beneficial to the estate, and in some cases where the benefit enures to herself or the estate, are valid and binding." *Kelly Married Women,* page 268, and authorities.

It seems to me, therefore, that the judgment of the Circuit Court should be affirmed—the judgment to be levied and collected of the separate property of the defendant and not otherwise.

Judgment reversed.