## THE AULTMAN & TAYLOR COMPANY v. GIBERT.

1. A finding of fact by the master, concurred in by the Circuit Judge, approved.
2. A married woman's separate property is not bound by a mortgage executed by her in 1884 to secure the note of another person.
3. A married woman had the power to purchase property in 1884 and to

give her note therefor, but where purchased for the use of her husband, she had not the power to mortgage other property, a part of her separate estate, to secure the payment of such note.

4. Attorney's fee to plaintiff may be allowed as a part of the judgment against defendant, when so provided in the contract sued on.

Before FRASER, J., Abbeville, February, 1887.

Upon the points considered by this court, the master's report was as follows :

Mrs. Gibert and Mrs. Mouchet set up the defence that they are married women, and their separate property is not bound by their contract. As to Mrs. Gibert, it may be said that she has already suffered judgment to go against her on the first instalment of the note, and her interest in the land has been foreclosed. Thus far I think she is estopped by the judgment of the court. Her liability on the note is that of principal, and the testimony shows that she was the purchaser of the machinery. Moreover, she has mortgaged her land, which, it seems to me, is a contract "as to her separate property," if any contract can be such; and the statute expressly declares that her mortgage shall have the same legal force and effect as if she were unmarried. This statute has been declared by the Supreme Court to be not only not in contravention of the constitution of South Carolina—and therefore a legitimate exercise of legislative authority—but to be carrying out the manifest intent and express meaning of the constitution. I do not see how Mrs. Gibert can escape liability on her note— that is, on her mortgage.

Mrs. Mouchet did not sign the note at all. Her connection with the transaction arises from having signed the mortgage. The mortgage appears to have been founded upon sufficient consideration and properly executed. The same may be said of her power to make a mortgage as of Mrs. Gibert's. The mortgage, it is true, was given to secure a debt not her own, but a similar transaction was held good by the Supreme Court in *Witsell* v. *Charleston*, 7 *S. C.*, 88. I think her interest in the mortgaged premises is bound.

. Subject to the recommendation above made, I submit the following findings of law and fact :

Matters of fact: 1. That the note and mortgage were executed and duly transferred, as set forth in the complaint, and plaintiffs are the owners thereof. 2. That judgment has been recovered on the first instalment of the note, and foreclosure secured of Mrs. Gibert's and B. E. Gibert, jr.'s, interest in the mortgaged premises. 3. That there is now due on the second instalment of said note the sum of three hundred and fifty-eight dollars, principal and interest, besides attorney's fees. * * * 5. That the consideration of said note was the purchase money of a ten-horse power steam engine, gin, press, and thresher. * * * 8. That Sarah J. Gibert was a married woman at the time when she executed said note and mortgage, and Lucy B. Mouchet was a married woman at the time when she signed said mortgage. 9. That Sarah J. Gibert was the purchaser of said machinery and the principal on said note and mortgage.

Conclusions of law: * * * 2. That the separate property of Sarah J. Gibert is bound by her said note, and her interest and that of Lucy B. Mouchet in the mortgaged premises are bound by the said mortgage. 3. That plaintiffs are entitled to judgment for the second instalment of said note, including attorneys' fees, and to a decree of foreclosure and sale of the defendants' interests in said mortgaged premises.

The Circuit Judge simply confirmed this report, and fixed the attorney's fee at fifty dollars. Plaintiffs' exceptions alleged error in the foregoing findings of the master, and some others not considered by this court.

*Messrs. Perrin & Cothran,* for appellants.

The master and Circuit Judge having concurred in the finding, that Sarah J. Gibert was the purchaser of the machinery, the finding was conclusive, there being testimony to sustain it. 24 *S. C.,* 595; 22 *Id.,* 255. Mrs. Gibert had the right, under sec. 2037 of General Statutes, 1882, to purchase the engine. 15 *S. C.,* 581, 602. Doubtless the power to make a contract carries with it the power to execute a mortgage to secure it. *Wells Married Women,* 26 *S. C.,* 525.

The extent of a married woman's power to contract and to charge the payment thereof on her separate estate are fixed by

the Constitution, art. XIV., sec. 8. It introduces the rule of general competence. 7 *S. C.*, 100. The disabilities of a married woman, at the common law, was the result of *her condition, under the policy of the common law*, during marriage, which was called *coverture.* 3 *Strob.*, 361. The disabilities of *coverture* (not of marriage, but of her condition under the policy of the common law) are the simple consequences of that sole and paramount authority which the law vested in the husband. 2 *Kent*, 150 ; *Schouler H. & W.*, § 97 ; 1 *Strob. Eq.*, 32. The provisions of the constitution effectually protect the wife's separate property from the marital rights of the husband. 17 *S. C.*, 314 ; 7 *Id.*, 100. The absolute control of the wife's property by the husband (*coverture*) being abrogated by the constitution, its incidents, the disabilities of the wife, necessarily go with it. As soon as a *feme covert* acquires a will and an interest distinct from and independent of her husband, the disability of coverture is supposed to cease. 1 *Bac. Abr.*, 504. The purpose of the constitution was not to *confer* any powers or estate on a woman at marriage, but to exempt her property from the attaching of the marital rights of the husband, which alone were the ground of her disabilities. Merger of civil existence is no longer the effect of marriage, but she retains her property, with the *jus disponendi*, as she held it before marriage. 17 *S. C.*, 327. A married woman is, in terms, invested with the powers of a *feme sole* over her separate property by the constitution, which were unlimited. The result of the abrogation of the marital rights of the husband as to her property. 7 *S. C.*, 100 ; 6 *Rich. Eq.*, 43. The power to *alienate* as if she was unmarried, was especially mentioned, because, under the statute of 1795 (5 *Stat.*, 257), she was forbidden to alienate, except under certain forms. The power to bequeath and devise was especially mentioned, because, under the statute of 1733 (3 *Stat.*, 342), a will made by a married woman was null and void. In framing new constitutions, statutes are not repealed by implication, but they are of force, unless inconsistent with the provisions of the constitution. *Dwar. Stat.*, 188 (n); 2 *Ohio* (N. S.), 607. The abrogation of the marital rights of the husband, and the repeal of the two statutes, the progeny of the policy of the common law, completed her emancipation from its servitude.

The construction of the constitution by the Supreme Court in *Witsell* v. *Charleston, supra,* as conferring the rights of property and the power to contract on a married woman, as if she were a *feme sole,* is approvingly quoted in 15 *S. C.,* 581; 17 *Id.,* 327; 24 *Id.,* 274.

The amendment of 1882 to sec. 3, chap. C., General Statutes, cannot have the effect of remanding a married woman to her condition of disability at the common law. The repeal of any of the statutes, re-enacted in the General Statutes of 1872, shall not revive any law heretofore repealed or superseded. Secs. 3 and 10, chap. CXLVI., Gen. St., 1872. The common law and statutes, merging a woman's power to contract and control her property into that of her husband at marriage, was superseded and repealed by the constitution and acts of 1870. Secs. 1, 2, and 3, chap. C., General Statutes of 1872; 15 *S. C.,* 581, 602. Admitting that the amendment of 1882 repealed or amended sec. 3, chap. C., *supra,* it could not *pro tanto* remit a married woman to her incompetency at the common law. Secs. 3 and 10, chap. 146, *supra.* There are no repealing words in the amendment of 1882, and repeals by implication are not favored. 14 *S. C.,* 169; 13 *Id.,* 3, 394.

The constitution of 1868, and acts passed thereunder, conferred upon a married woman all rights of property and full power to contract. 15 *S. C.,* 581. She was *suæ juris* at the time the amendment of 1882 was passed, and not just emerging from her incompetency at the common law; and that amendment must be construed in the light of the constitution and the statutes of 1870 and 1872, and not in the "light of the common law." "Every statute derogatory of the rights of property must be strictly construed." *Dwar. Stat.,* 257 (n. 40).

*Messrs. Graydon & Graydon,* contra.

March 28, 1888. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. In 1884 the defendants, Sarah J. Gibert, B. E. Gibert, sr., B. E. Gibert, jr., and W. S. Mouchet, executed a note to Mrs. Fannie J. Marshall, of Abbeville County, for $1,250, payable in certain instalments. The note was given

in the purchase of a steam engine and other machinery, to secure which the defendants joined in the execution of a mortgage covering a certain tract of land, or their interest therein, containing one hundred and fifty acres, more or less. The note or obligation was assigned and delivered to the respondent in October, 1884. The first instalment, which fell due January 1, 1885, not having been paid, suit was instituted by the respondent, and judgment obtained in February, 1885, for $765, including interest, fees, and costs, against Sarah J. Gibert, Benj. E. Gibert, jr., and W. S. Mouchet, and foreclosure ordered as to Sarah J. Gibert and Benj. E. Gibert, jr. No sale, however, has been made of the interest of these parties under said foreclosure.

The second instalment became due July 1, 1885, which not being paid, the action below was instituted, demanding judgment of foreclosure as to the interests of the other mortgagors not included in the foreclosure above, to wit, Jennie L. Gibert, A. E. Gibert, Lucy B. Mouchet, and Addie E. Gibert, and that the proceeds of sale be applied, after costs and expenses, to both of the instalments above, the balance, if any, to be held in court to meet the instalment to become due. Judgment was also demanded against Sarah J. Gibert, Benj. E. Gibert, jr., Benj. E. Gibert, sr., and W. S. Mouchet, for any balance that might remain due after said application of the proceeds of the land. The defence set up by all of the defendants was failure of consideration, and in addition to this the defendants, Sarah J. Gibert and Lucy B. Mouchet, interposed the fact that they were married women at the time the said note and mortgage were given.

The master to whom the case was referred found, among other facts not necessary to be mentioned, that there was no breach of warranty; that Sarah J. Gibert and Lucy B. Mouchet were married women, and that Sarah J. Gibert was the purchaser of the machinery, and the principal in the note and mortgage. The Circuit Judge, Hon. T. B. Fraser, who heard the case upon the report of the master, with exceptions, sustained the master in his findings of fact, and adjudged that plaintiffs have judgment against Sarah J. Gibert, Benj. E. Gibert, sr., Benj. E. Gibert, jr., and W. S. Mouchet for the sum of $700, with interest, and also for $50, attorneys' fee; and further, that plaintiffs have judgment of

foreclosure of the interest of the said Sarah J. Gibert, Benj. E. Gibert, jr., Lucy B. Mouchet, Jennie L. Gibert, A. E. Gibert, and Hugh R. Gibert in the mortgaged premises described, and that they have order of sale for the same, giving leave to plaintiffs to issue execution for any deficiency after applying the proceeds of sale of the land, and allowing $50 fee for the attorneys.

From this decree the married women, Sarah J. Gibert and Lucy B. Mouchet, have appealed, alleging error, because his honor overruled defendants' exceptions, six in number, to the master's report, and five additional exceptions as to the rulings of his honor in the judgment pronounced. Four of the exceptions to the master's report involved questions of fact, to wit: Whether Mrs. Gibert was the purchaser of the machinery. 2nd. Whether the consideration of the note and mortgage had failed. 3rd. And, consequently, a breach of warranty; and, 4th. Whether the saw mill was too heavy for the engine. As to these questions, inasmuch as we do not find an evident preponderance of testimony against the findings of the master concurred in by the Circuit Judge, under the well established rule they must stand as facts in the case. The other exceptions, including those to the decree, raise the question as to the liability of married women on mortgages, and also whether his honor erred in "giving leave to plaintiff to issue execution against Mrs. Gibert for the deficiency of the mortgage debt."

The legal existence of a married woman at common law was merged into that of her husband, and as a general rule she had no power to engage in business, purchase property, or make contracts of any kind, her condition as to such matters being that of general disability. The constitution of 1868 (art. XIV., section 8) made a change as to her property, declaring all property held by her at her marriage, or acquired by her, either by gift, grant, inheritance, devise, or otherwise, should be her separate estate, in no way liable for the debts of her husband. After this provision as to the status of her property, it further provided that she should have the power to bequeath, devise, and alienate said property, the same as if she was unmarried. Subsequent to the adoption of the constitution, married women, by act of assembly, were empowered (§ 2037) to purchase any species of property in

their own name and take proper legal conveyances therefor, and to contract and be contracted with as to her separate property in the same manner as if she were unmarried.

Now, Mrs. L. B. Mouchet, appellant, did not sign the note sued on. She, however, joined in the mortgage. She, then, occupies the position of having given a mortgage to secure the debt of another, being a married woman at the time. Such being the case, her appeal is fully sustained by the principles announced in *Habenicht* v. *Rawls*, 24 *S. C.*, 461 ; *Aultman & Taylor Company* v. *Rush*, 26 *Id.*, 517 ; and *Gwynn* v. *Gwynn*, 27 *Id.*, 525, and we need do no more, therefore, than to refer to said cases.

There is a difference, however, as to appellant, Mrs. Gibert. The master and the Circuit Judge concurred in finding that she was the purchaser of the machinery and was principal in the note for the purchase money. This court held in *Pelzer, Rodgers & Co.* v. *Campbell & Co.* (15 *S. C.*, 598), that the act of assembly, *supra*, which gave a married woman power to purchase property, &c., thus enlarging her powers beyond the constitutional grant, *supra*, was yet constitutional. Under this act Mrs. Gibert doubtless could make the purchase alleged, and if she did do so, as found below, then the note was within the scope of said power.

But admitting this, does it legalize her mortgage and subject it to foreclosure ? This depends upon the affirmation of one or both of the following propositions : Does the power conferred in section 2037, General Statutes, upon a married woman ( in view of her common law disabilities) to purchase property, carry with it the power to execute a mortgage of her separate estate to secure the contract of purchase ? 2nd. Does the power to contract and be contracted with as to her separate estate, conferred also by act of assembly (section 2037, General Statutes), carry with it the power to mortgage her separate estate to secure a contract of purchase made by her of property in no way connected with, or contributing to, said separate estate ? We cannot affirm either of these propositions. As to the first, no doubt if this mortgage had been executed after the act of 1870, conferring power upon married women to purchase property and to make contracts gen-

erally as fully as a *feme sole*, and before the amendment of 1882, it would have been a valid instrument; but it was not executed until after the amendment of that act, in 1882, which repealed the general power before conferred by restricting said power to contracts in reference to their separate estate, leaving the special power to purchase intact. Under these conditions the question arises whether the power to purchase property which married women may still have, carries with it the power to mortgage her separate estate to secure such a contract made by herself.

Before the act of 1870 the condition of married women, as we have said, was that of complete disability. as to contracts, except such as are necessarily incident to the powers expressly conferred by the constitution. By that act, however, and the amendment referred to, they have been invested with the powers above mentioned, to wit, to purchase property, and to contract and be contracted with as to their separate estate. Now, what is the limit of the power to purchase property conferred, and what does it embrace? To ascertain and determine this we must go to the grant itself and the terms thereof, remembering that before the grant she was powerless as to all contracts, except as above excepted, and therefore that no light·can be thrown upon the question from an analogy which might seem to exist between married women with their disability partially removed, and those exercising a common law right to contract generally, and never being under any disability. In other words, we must look alone to the act conferring the power, and from its terms determine the extent of the grant.

The language of the act, as to this matter, is as follows : "A married woman shall have the right to purchase any species of property in her own name and take proper legal conveyances therefor, * * * as if she were unmarried." The full power to purchase property is conferred beyond doubt, but what more? Nothing expressly, and certainly nothing can be implied, except such power as may be necessary to the exercise of the power expressed. Does the execution of a mortgage given to secure a purchase fall under either of these conditions? We think not. It is certainly no part of the contract of purchase, nor is it a necessary accompaniment of such a contract, but it is simply col-

lateral thereto executed, or not, as the parties may choose. It is a mere incident, not essential, and perhaps as often not given in a purchase, as given.

We conclude, therefore, that the power conferred on married women by the act of 1870, to purchase property, does not carry within itself the power to mortgage their separate estate to secure such purchase. And especially are we satisfied with this conclusion, when we find in the next part of the act that as to contracts about their separate estate, they are restricted to such only as may have a direct reference to said estate other than the mere imposition of a lien thereon as security for some other contract having no reference to said estate. Under this latter part of the act a contract of a married woman, to be binding upon her separate estate, "must be designed to benefit her separate property, or in some other way related to or concerned such property," using the language of Mr. Justice McIver in *Habenicht* v. *Rawls*, 24, *S. C.*, 461. Now, if a mortgage given to secure a contract of purchase, having no reference to the separate estate, was held good under the theory that the power to purchase carried with it the power to make such a mortgage, then we would have the inconsistency of the mortgage being invalid, because it has no reference to said estate in the sense of the act, as construed in *Habenicht* v. *Rawls*; and yet valid upon the former theory—valid and invalid at the same moment. We cannot hold this. No such inconsistency, however, exists, by giving to both portions of the act their legitimate and plain meaning, which is the safe rule in construction, and which we have done hereinabove by recognizing the right of married women to purchase property, as provided in the act, and at the same time restricting her in contracts about her separate property to such as have a direct reference thereto in the sense of the act as heretofore construed.

As to the second proposition. It is hardly necessary to say that the mortgage of Mrs. Gibert had no reference to her separate estate in the sense of the act. The real contract in the case was the purchase of the steam engine and other machinery, not for herself, nor for the use of her separate estate in any way, but for the use of her husband, and the mortgage was given to secure this contract.

As to the attorneys' fee of $50, the obligation or note provided for the payment of a fee, and we do not see that its allowance, or the amount, was incorrect.

It is the judgment of this court, that the judgment of the Circuit Court, as against Mrs. L. B. Mouchet, be reversed, and that in so far as it adjudges a foreclosure of the mortgage against Mrs. Sarah J. Gibert, it be also reversed. In other respects it is affirmed.

MR. JUSTICE McIVER concurred.

MR. JUSTICE McGOWAN. I agree that this opinion follows the recent case of *Aultman & Taylor Company* v. *Rush.* I still entertain the views there expressed in the dissent, but I will not restate them, for the double reason that the majority of the court then gave construction to the law as amended in 1882, and the legislature at its last session settled the question for the future by declaring that: "All conveyances, mortgages, and like formal instruments of writing affecting her separate estate, executed by a married woman, shall be effectual to convey or charge her separate estate, whenever the intention so to convey or charge such separate estate, is declared in such conveyances, mortgages, or other instruments of writing." Acts of 1887, page 819.