## KUSTER *et al. v.* DICKSON *et al.*

*(Circuit Court, D. South Carolina.* February 13, 1891.)

WIFE TRADING AS FEME SOLE—HUSBAND AS AGENT.

    In South Carolina, under Const. art. 14, § 8, declaring all the property held at the time of her marriage, or acquired thereafter, by a married woman to be her separate property; the act of 1887, (19 St. at Large, 819,) making all her earnings and income her separate estate; the act of 1882, (Gen. St. S. C. § 2037,) declaring that a married woman shall have the right to purchase any species of property in her own name, and to take conveyances therefor, and to contract "as to her separate estate" as if she were unmarried; and the decisions of the supreme court construing these acts,—a married woman can engage by herself in trade, and employ her husband as agent to conduct the business.

Rule to Show Cause why a Receiver be not Appointed.

*Julius H. Heyward,* for plaintiffs.
*Westmoreland & Haynesworth,* for defendants.

SIMONTON, J.    The defendants, E. B. Dickson and M. Reid Dickson, at one time doing business as Dickson Bros., in Augusta, Ga., became indebted to the plaintiffs, Kuster & Co., and suffered judgment in the sum of $1,108.34.    Being insolvent, the firm was dissolved; E. B. Dickson removing to Greenville, and M. Reid Dickson to Spartanburg, in this state.    The wife of M. R. Dickson inherited some $3,000 from her father, and, putting this into business, she purchased with cash and credit a stock of goods, and carries on business in Spartanburg under the name of "The New York Syndicate Store."    Her husband, M. R. Dickson, is her clerk and manager at $75 per month.    The wife of E. B. Dickson, in Greenville, having no money, purchased with some money she borrowed a bankrupt stock in Greenwood, sold it at a profit, and, with the money thus made, and some more money borrowed, purchased another stock of goods, and opened a store in Greenville.    The goods are bought and the money borrowed in her name.    Her husband is her chief clerk and manager, at a salary of $75 per month.    Kuster & Co. issued execution, which was returned *nulla bona.*    They then instituted supplemental proceedings, and took testimony, with the above result.    When the testimony was filed, they obtained a rule against each defendant to show cause why a receiver be not appointed to take charge of the stock of goods in these two stores.

The position taken by the plaintiffs, as I understand it, is this:    The business of these two stores is conducted by the defendant debtors, the husbands of the married women, each one as the agent for his wife.    A married woman, under the law of South Carolina, cannot engage in trade.    She cannot, therefore, authorize another as her agent to do so. The husband, thus holding himself out as agent for one not competent to appoint an agent, is in the position of one acting for a foreign principal, or for an undisclosed principal, and is himself personally liable on all contracts for the purchase of goods, and so the owner of the goods purchased, which are liable for his debts.    Can a married woman in South Carolina engage in trade?    The question has never been made in this state.    The learned and able, as well as exhaustive, arguments of counsel deserve careful consideration.    Until the adoption of the constitution of 1868, the relations of husband and wife were governed in this state by the common law.    Article 14, § 8, of the constitution declares:

"The real and personal property of a married woman held at the time of her marriage, or that which she may thereafter acquire, either by gift, grant, inheritance, devise, or otherwise, shall not be subject to levy and sale for her husband's debts, but shall be held as her separate property, and may be bequeathed, devised, or alienated by her the same as if she were unmarried: provided, that no gift or grant from the husband to the wife shall be detrimental to the just claims of his creditors."

In 1887 (19 St. at Large, 819) the legislature of South Carolina declared that all the earnings and income of a married woman shall be

her own separate estate, and shall be governed by the same provisions of law as apply to her separate estate. In 1870 the legislature (14 St. at Large, 325) gave to married women unlimited power to contract. *Pelzer* v. *Campbell*, 15 S. C. 601. But in 1882 (Gen. St. S. C. § 2037) this was amended so as to read:

" A married woman shall have the right to purchase any species of property in her own name, and to take proper legal conveyances therefor, and to contract and be contracted with *as to her separate property*, in the same manner as if she were unmarried: provided, that the husband shall not be liable for the debts of the wife contracted prior to or after their marriage, except for her necessary support."

If this court were at liberty to construe this act, the terms in which it is couched would end this question. A married woman "can purchase any species of property in her own name." It would then become her separate property, and "she can contract and be contracted with as respects it in the same manner as if she were unmarried." As she has the power to buy, so she has the power to sell. She can buy in such quantity as she pleases, she can sell in such quantity as she chooses. But we are controlled in our construction by the rulings of the supreme court of the state, and must rely on their conclusion. The words, "as to her separate property," inserted in the amendment, have been a fruitful source of litigation, and the construction they have received has worked great loss in many instances, and has covered in some gross fraud. The result of this litigation, however, has established these rules: A married woman cannot, directly or indirectly, make herself or her separate estate liable for the debts, contracts, or engagements of her husband, or any other person.[1] She can bind herself by contracts made by herself for the preservation, maintenance, improvement, or productive development of her separate estate, and may constitute her husband, or any one else, her agent in this behalf. Thus, is *Hunt* v. *Brown*, 29 S. C. 598, 6 S. E. Rep. 937, she was held liable for mules bought by her for her plantation, and in *Brown* v. *Thomson*, 27 S. C. 500, 4 S. E. Rep. 345, she is held liable for provisions sold to her to be used by her farmhands. In *Greig* v. *Smith*, 29 S. C. 435, 7 S. E. Rep. 610, she was held liable for moneys and supplies advanced for the cultivation of her plantation. The court goes further than this. She can buy property on credit, give her obligation for it, and mortgage other property to secure the obligation. *Dial* v. *Agnew*, 28 S. C. 455, 6 S. E. Rep. 295. Her contract as a subscriber to shares in a building and loan association, whereby she binds herself to pay monthly dues and interest, is good, and she can mortgage property to secure it. *Association* v. *Jones*, 32 S. C. 313, 10 S. E. Rep. 1079. So a married woman can, with a view to enlarge or increase her separate property, buy other property, and create a lien on that already owned by her; or, if she have no separate property, can create it by borrowing money for that purpose. WALLACE, J., in *Dial* v. *Agnew*,

[1] Habenicht v. Rawls, 24 S. C. 461; Aultman & Taylor Co. v. Rush, 26 S. C. 520, 2 S. E. Rep. 402; Aultman & Taylor Co. v. Gibert, 28 S. C. 311, 5 S. E. Rep. 806; Goodgion v. Vaughn, 32 S. C. 49, 11 S. E. Rep. 351; Bank v. Epstin, 44 Fed. Rep. 403.

*supra.* Mr. Justice McIver, speaking for the court in *Association* v. *Jones,* 32 S. C., and 10 S. E. Rep., *supra,* quoting the cases, sums up thus:

"It must be regarded as settled that when a married woman, either directly or through her agent, borrows money from another, the money so borrowed becomes at once part of her separate estate, and her contract to repay the same is a contract with reference to her separate estate, which may be enforced against her; and that the lender, in the absence of notice to the contrary, has a right to assume that the money was borrowed for the use of the married woman; and she is estopped from denying the fact, unless it is shown that the lender had notice to the contrary. These cases furthermore determine that the husband may, if so authorized by the wife, act as her agent, and that the disposition which may be made of the money after it has been borrowed cannot affect the question."

If money can be borrowed, so may goods be borrowed. If a married woman can lay out moneys on her separate estate for the purpose of producing crops and selling them, she can purchase property and sell it for the purpose of profit. If she buys a stock of goods on credit, either to add to or to create a separate estate, it becomes "at once a part of her separate estate, and her contract to pay for it is an enforceable contract against her." If she can acquire property by this way, she has all the rights of ownership over it, and can sell it how and when she pleases, and can authorize any one to do so. If she devotes her time and skill and intelligence in effecting such sale, under the act of 1887 her earnings are her own separate estate. If she prefers to act through an agent, she can, under the decisions, do so, and appoint even her husband as such agent. There is nothing in the constitution or statute law, or in the decisions of the supreme court of South Carolina, which forbid a married woman from engaging by herself in trade. It would seem that she cannot be a member of a firm. *Gwynn* v. *Gwynn,* 27 S. C. 526, 4 S. E. Rep. 229.

It is unnecessary to discuss any other question made in the case. The rule to show cause is discharged.

