## HABENICHT v. RAWLS.

1. Under the power given by statute to a married woman, "to contract and be contracted with *as to her separate property* in the same manner as if she were unmarried," she can make only such contracts as at the time they are made, relate to or concern her separate property.
2. A married woman signed merely as a surety the promissory note of her husband. *Held*, that she was not liable, and would not have been, even if she had in express terms declared her intention thereby to bind her separate estate.
3. Before a married woman can be made liable for the breach of a contract alleged to have been made by her, it must be made to appear from the inherent nature of the contract, or otherwise, that the contract was made in relation to, or concerned, her separate property.

Before HUDSON, J., Richland, October, 1885.

This was an action commenced in March, 1885, by C. C. Habenicht against Rawls & Wilhalf, John Agnew, jr., and Jennie Agnew, upon three promissory notes bearing date January 24, 1883, given to plaintiff by Rawls & Wilhalf (a mercantile firm composed of J. S. Rawls, C. H. Wilhalf, and John Agnew, jr.), and endorsed by said John Agnew, jr., and Jennie Agnew, his wife. Mrs. Agnew was at that time, and at the time of the trial, possessed of a separate estate.

Mrs. Agnew answered, alleging, among other defences, that she was a mere surety, and that at the time she signed the note she was a married woman, and still was such. The evidence showed the facts stated in this answer to be true.

The plaintiff requested the judge to charge the jury:

1. That a married woman has a capacity to contract debts as if unmarried, restricted only to their collection from her separate property.

2. If the foregoing be refused, we would ask the court to charge: That it is a matter of evidence whether Mrs. Agnew intended to charge her separate estate with the payment of the notes, although she did not, in express terms, so charge it; and that it is for the jury to determine, from the evidence and the circumstances, whether she so intended.

The judge charged the jury as follows:

The principal question in this case is as to the power of a married woman to bind her separate estate by her contracts, and as to that my instructions to you will probably determine this case; for, as you are the judges of the facts, I am the sole judge of the law, and you are bound to take it as I give it to you. If I commit error, there is a tribunal in which these gentlemen can have me corrected.

A married woman can make no contract, except such as is expressly authorized by law, and she cannot bind herself except in one manner, and that is declared by the statute. She may *"contract and be contracted with as to her separate property."* The contract must be as to her separate property, must have reference to her separate property, must concern her separate property. A married woman who undertakes to enter into a contract of endorsement or suretyship, or to make a joint note with others, cannot bind herself thereby unless it is expressed upon the face of the instrument that she intends to bind her separate property, or the inherent nature of the contract must show that it concerned her separate property, or it must be proved *aliunde* that her intention was to bind her separate property. The simple endorsement of a promissory note, the joint making of a note, or other contract of suretyship, and nothing more, cannot bind a married woman.

As to the point whether John Agnew, jr., and Mrs. Jennie Agnew are endorsers of these notes, or joint makers with Rawls & Wilhalf, I am bound to charge you that when one signs his name across the back of a promissory note, payable to the order of a third party, and before the signature or endorsement by said third party, and no proof going to show to the contrary, he is bound with the principal as an original promisor and maker of the note.

His honor, the presiding judge, here read the plaintiff's requests to charge, and then proceeded: The first of these requests I refuse, gentlemen. The second is correct, with the modification that there must be some evidence besides the fact of signing, some evidence *aliunde* to show her intention to bind her separate property, and in this case, gentlemen, there is none.

The form of your verdict should be: "We find for the defendant, Jennie Agnew;" and if you should find for the plaintiff, against the other defendants, you should so state, with the amount of your verdict written out.

The jury found the following verdict: We find for the defendant, Jennie Agnew, and we find for the plaintiff, as against Rawls & Wilhalf and John Agnew, jr., three hundred and ten dollars and forty-six cents.

The plaintiff appealed upon the following exceptions:

I. Because his honor charged the jury that "a married woman, who undertakes to enter into a contract of endorsement or suretyship, or to make a joint note with others, cannot bind herself thereby, unless it is expressed upon the face of the instrument that she intends to bind her separate property, or the inherent nature of the contract must show that it concerned her separate property, or it must be proved *aliunde* that her intention was to bind her separate property. The simple endorsement of a promissory note, or other contract of suretyship, and nothing more, cannot bind a married woman."

II. Because his honor charged the jury that there was no evidence in this case of an intention on the part of Mrs. Jennie Agnew to contract as to her separate estate.

III. Because his honor refused plaintiff's first request to charge.

IV. Because his honor refused plaintiff's second request to charge without modification.

V. Because his honor charged the jury, in effect, that they must find for the defendant, Mrs. Agnew.

*Messrs. John T. Sloan, jr.,* and *W. H. Lyles,* for appellant, cited 12 *Am. Rep.,* 481; 1 *Bish. Mar. Wom.,* §§ 604, 848–858; 864–879; 47 *Mo.,* 504; 34 *Ala.,* 535; 13 *B. Mon.,* 384; 17 *Ark.,* 189; 4 *Beav.,* 319; 1 *Bro. C. C.,* 201; 1 *Ark.,* 189; 26 *Ala.,* 332; 3 *Green Ch.,* 512; 23 *Mo.,* 457; 19 *Ala.,* 180; 20 *Ohio St.,* 371; 17 *Cent. L. J.,* 1; 16 *Id.,* 244; 3 *DeSaus.,* 417; 2 *Bish. Mar. Wom.,* §§ 370, 371, 237; 16 *S. C.,* 256; 18 *N. Y.,* 265; 1 *Strob. Eq.,* 27; 58 *N. Y.,* 84; *Gen. Stat.,* §§ 2036, 2037.

*Mr. John Bauskett,* contra.

March 25, 1886.   The opinion of the court was delivered by

MR. JUSTICE MCIVER.   On January 24, 1883, the defendants, Rawls & Wilhalf, made the notes sued on payable to the plaintiff, and before their delivery to him they were endorsed by the other two defendants, Jennie Agnew then and now being a married woman.   The notes were given in discharge of a lien held by the plaintiff on the stock of goods belonging to Rawls & Wilhalf. Mrs. Agnew had no interest in the stock of goods, and received no consideration for her endorsement.   She was, therefore, practically, a mere surety for the debt of another; and the sole question raised by this appeal is whether she, being a married woman, was capable of making such a contract.

At common law, there is no doubt that she had no such capacity, and, therefore, the inquiry is whether she has, by statute, been endowed with the power to make such a contract.   That the act of 1870, incorporated in chapter C. of the General Statutes of 1872, page 482, section 3, did confer upon a married woman the power to make any contract which a *feme sole* could make, even to the extent of becoming surety for her husband, was settled by the cases of *Pelzer, Rodgers & Co.* v. *Campbell,* 15 *S. C.,* 581, and *Clinkscales* v. *Hall, Ibid.,* 602.   But at the very next session of the general assembly, which convened only a very few days after the decisions in the cases just recited were rendered, the law which had been thus construed in those cases was altered so as to limit the power of a married woman to contract, and the question is as to the extent and effect of that limitation.

By the law, as it formerly stood, it was declared that "a married woman shall have the right   *   *   to contract and be contracted with in the same manner as if she were unmarried"; but by the law as it stood at the date of the alleged contract here in question, and still stands, it is declared that "a married woman shall have the right   *   *   to contract and be contracted with, *as to her separate property,* in the same manner as if she were unmarried"; the five words italicised having been inserted as an amendment to the law as it formerly stood; so that the question raised by this appeal is narrowed down to the inquiry as to the

effect of those five words. It seems to us that the most natural and the proper construction of the terms of this act, as amended, is that adopted by the Circuit Judge: that the contract which a married woman is therein authorized to make is "as to her separate property, must have reference to her separate property, must concern her separate property."

It will be observed that the question is as to what contracts a married woman may make, and not as to their effect after they have been made. If a given contract is one that the law authorizes a married woman to make, then its effect is, and must necessarily be, the same as that of a contract of a person not laboring under any disability. It is very clear that the legislature intended to make some alteration in the law as it formerly stood, and we think it equally clear that the intention was to limit the power of a married woman as to the kind of contracts which she was permitted to make, viz., to those in relation to her separate property. As we have seen, prior to the amendment a married woman could make any kind of contract which a person *sui juris* could make, and the intention undoubtedly was to alter this, and hence her general power to contract was qualified by the words constituting the amendment, so that, while formerly she had the unlimited power to contract, now she can only make contracts "as to her separate property."

We are unable to discover anything in the act which indicates that the intention of the legislature was simply to confine her *liability* on *any* contract, which she might choose to make, to her separate estate, as is contended for by appellant. There is nothing in the act which shows that the attention of the legislature was directed to the kind of property which could be held liable for the *performance* of a married woman's contract; and, on the contrary, the language used shows that the legislative mind was directed to the *kind of contract* which she was to be permitted to make, and not to the *kind of property* which could be resorted to in case of a breach of the contract. Very recently, before the law was amended, it had been determined, as we have seen, although there was no little contrariety of opinion upon the subject, as is well known, that a married woman had the same capacity to make any kind of contract as any other person, and the irresistible

inference is that it was this that the legislature intended to alter, so as to confine the contracting power of a married woman to a certain class of contracts, to wit, those which were made as to her separate estate.

We are not aware that any controversy had arisen or any adjudication had been made as to the kind of property which could be made liable for the breach of a married woman's contract, and, therefore, no occasion had arisen for an alteration of the law in that respect. Indeed, we do not see how such a controversy could have arisen, for the old code, as well as the code of 1882, expressly provided that damages recovered against a married woman could only be collected out of her separate estate. Section 298 of the old Code, which is in this respect the same as section 296 of the amended Code, provides that "in an action brought by or against a married woman, judgment may be given against her as well for costs as for damages, or both for such costs and for such damages, in the same manner as against other persons, *to be levied and collected of her separate estate, and not otherwise.*" And in section 310 of the old Code, the provision was that "an execution may issue against a married woman, and it shall direct the levy and collection of the amount of the judgment against her *from her separate estate and not otherwise ;*" and the same provision is found in section 307 of the present Code. So that it is very clear that the construction contended for by the appellant, to wit, that the amendment now under consideration was simply designed to limit the liability of a married woman on her contracts to her separate estate, cannot be the correct one; for such a construction would make the amendment in question wholly unnecessary, as that was the law before.

We are therefore of opinion that the object of the amendment was *not* to indicate the kind of property which could be made liable for the breach of a married woman's contract, but to limit her right to contract, so that she could only make such contracts as, at the time they were made, related to or concerned her separate property. Hence, before a married woman can be made liable for the breach of a contract alleged to have been made by her, it must be made to appear, either from the inherent nature of the contract or otherwise, that the contract was made in rela-

tion to or concerned her separate property.  Even if she declares in express terms her intention to bind her separate estate, that alone will not be sufficient to render the contract valid, for the question is as to her *power*, which is to be determined by the nature of the contract itself, and not as to her *intention* to bind her separate property.  If, therefore, a wife should sign a note as surety for her husband, or indeed for any other person, and should declare in the note in express terms her intention to bind her separate estate, that would not make the contract valid as to her unless it was made to appear that the contract, though executed by her as surety, was designed to benefit her separate property or in some other way related to or concerned such property.

We have not deemed it necessary to go into a consideration of the very numerous cases elsewhere upon questions similar to the one now before us; for while the statutes of the various States are somewhat like our own, yet they differ sometimes very materially in their phraseology, and in the very great conflict of authority abroad we have thought it more likely that we would reach a correct solution of the question by confining our attention to the terms of our own statutes, viewed in the light of our own past legislation and adjudications.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE McGOWAN.  I concur in the result.  As the purpose of the act manifestly was to confer upon a married woman powers beyond what she possessed before, I cannot suppose that by the insertion of the words, "as to her separate estate," it was intended to defeat that object entirely as to contracts.  The same act, in conformity to the constitution, confers the powers "to bequeath, devise, and convey her separate estate in the same manner and to the same extent as if she were unmarried," and in order to harmonize the different provisions I incline to think that the intention of the amendment was to limit the power of a married woman *to such contracts as express an intention to bind*

_____

*her separate property*—such as are made with express reference
to—that is to say, "as to her separate property."

                                        Judgment affirmed.