## HAGAN v. HOOVER.

A contract of copartnership entered into by a married woman with a third person, containing stipulations on her part, is not binding upon her, as she had no power under the constitution and the statutes then of force to make such contract; and the other party cannot maintain an action for a breach on her part of these stipulations. *Gwynn* v. *Gwynn,* 27 S. C., 525, approved.

Before HUDSON, J., Hampton, March, 1890.

The opinion states the case.

*Mr. W. S. Tillinghast,* for appellant.

*Mr. E. F. Warren,* contra.

June 30, 1890.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   The defendant, respondent, a married woman, and the plaintiff, appellant, in January, 1886, entered into an agreement in writing, of which the following is a copy :

"THE STATE OF SOUTH CAROLINA.

"*Agreement made this twenty-first day of January, one thousand eight hundred and eighty-six, between Josephine A. Hoover and Adam F. Hagan, all of Hampton C. H., Hampton County, and State aforesaid :*

"It is mutually agreed by and between the parties above named,

to enter into a copartnership for the purpose of conducting a general mercantile business at Hampton C. H., under the firm name and style of Hoover & Hagan, upon the conditions hereinafter expressed; copartnership to continue from the expiration of our previous copartnership, which expired January 1st, A. D. 1886,[1] and to continue from that date for one or more years hence. The business of the firm, so far as Josephine A. Hoover is concerned, is hereby vested in Geo. H. Hoover, who is authorized to act in every respect for her as though she was personally present. It is mutually agreed, that each member of the firm is to share all losses and gains equally, except as is hereinafter expressed and agreed. Josephine A. Hoover and Adam F. Hagan both hereby agree, that all the resources belonging to each of them on the first of January, one thousand eight hundred and eighty-six, as shown by the books and papers of the said Josephine A. Hoover and Adam F. Hagan, who have been doing business as Hoover & Hagan at Hampton C. H., S. C., shall remain in the business. Josephine A. Hoover agrees to place such collateral security in the hands of factors, within ten days from date hereof, as will secure to the firm of Hoover & Hagan the sum of two thousand dollars, and to continue placing each year, by the thirty-first of January, such collateral security as will guarantee to the firm the said amount of money, to wit, two thousand dollars, except in case the firm gets able to place collateral security for itself sufficient to raise the above named amount, two thousand dollars. It is mutually agreed by and between the said firm of Hoover & Hagan, that all money raised by Josephine A. Hoover's collateral security for the firm is to become a debt of the firm. It is further agreed, that Josephine A. Hoover shall receive two hundred dollars per annum, for the use of her store house and fixtures, from the firm so long as they use it, and that the said firm continue business in it until they dissolve, and that they keep it in order sufficient for use. Adam F. Hagan agrees to keep the books of the firm, and give his attention to the business of the firm for and in consideration of six hundred dollars per annum and his board and washing. It is further agreed by and between the parties

[1] The original copartnership agreement was entered into in February, 1885.—REPORTER.

hereto, that Adam F. Hagan shall receive the above named salary and his board and washing, for his services to the said business, each and every year that this copartnership shall continue, the same to be paid by the firm, and all other expenses of clerk hire and running the business of the firm shall be paid by said firm. It is further agreed, that in case any person or persons being indebted to Geo. H. Hoover, agent, or Josephine A. Hoover, and make any payment, that the same be applied to the liquidation of the debts due the firm of Hoover & Hagan, and that any person or persons bound unto Geo. H. Hoover, agent, at this date, by lien, bill of sale, or by mortgage of real estate, shall be advanced without his consent for agricultural supplies or otherwise. It is further agreed, that each member pay their account due the firm on or by the 1st day of January each year, and that neither member draw from the firm more than five hundred dollars, during any one year, without the consent of the other member, besides the amount of rent of store and salary of Hagan. It is mutually agreed, that when this firm is dissolved, it shall be during the month of January or February. It is further agreed by the parties hereto, that they bind themselves, their heirs, executors, administrators, firmly by these presents for the faithful performance of each and every clause herein contained.

"In witness whereof, we have hereunto set our hands and seals, day and year above written.

"J. A. HOOVER, [L. S.]

"A. F. HAGAN, [L. S.]

"Signed, sealed, and delivered in the presence of

"CORA HOOVER,

"J. A. YOUMANS."

The plaintiff, claiming that the defendant, Mrs. Hoover, had failed to comply with the stipulations contained in said agreement, commenced the action below in 1889, alleging non-compliance on the part of Mrs. Hoover in several particulars, and demanding judgment: 1st. For an accounting of the partnership business. 2nd. That the defendant be required to settle her liabilities to the partnership. 3rd. That the creditors be protected. 4th. That plaintiff be decreed such portion of the profits of the firm as he may be entitled to, &c. And 5th. That the firm be dis-

solved. The defendant answered : First, that she was a married woman at the time of the making of the supposed contract mentioned in the complaint, and was still the wife of Geo. H. Hoover ; and, second, alleged non-compliance on the part of the plaintiff with the agreement in several particulars, &c.

The case was tried before his honor, Judge Hudson, who pronounced a decree, of which the following is a copy, to wit : "On hearing the pleadings and the testimony herein, and argument of counsel, and it appearing to the court that the defendant was at the time of making the alleged contract with the plaintiff a married woman, on the authority of the case of *Gwynn* v. *Gwynn*, 27 S. C., 525, it is ordered, that the complaint be dismissed with costs." The plaintiff has appealed, and alleges error on the ground, that his honor erred in holding that a married woman could not become a member of a partnership like the one here, and in ruling that the case of *Gwynn* v. *Gwynn*, *supra*, determined all of the questions involved against said plaintiff.

Under section 8, article XIV., of the Constitution of this State, "the real and personal property of a woman held at the time of her marriage, or that which she may thereafter acquire, either by gift, grant, inheritance, devise, or otherwise, shall not be subject to levy and sale for her husband's debts, but shall be held as. her separate property, and may be bequeathed, devised, or alienated by her the same as if she were unmarried," &c. And under certain acts of the general assembly (Gen. Stat., §§ 2035, '36, and '37), a married woman may purchase property and may contract and be contracted with in reference to her separate estate. Now, inasmuch, as at common law, as we have often stated, a married woman had no power to contract in any way, or about anything, and inasmuch as her power in this regard is now derived entirely either from the constitution or the acts of assembly referred to above, when a question arises as to her liability upon any alleged contract, the courts have only to consider whether or not such contract falls under either of these provisions, and then their duty is to determine accordingly.

Now, it is perfectly clear that the contract sued on here was not a contract such as a married woman could make under the constitutional provision above. It was neither a bequest, a devise,

nor an alienation of any separate property of her's. Neither does it fall under the act of assembly empowering a married woman to purchase property. Nor was it a contract with reference to her separate estate in the sense of the act on that subject. Instead of this, it was a contract to enter into a business relation, a copartnership with a third party, in which certain stipulations on her part were embraced and the action below was for the alleged breach of these stipulations. We do not think that the most liberal construction which could be given to the constitution and acts enlarging the powers of married women, or rather conferring certain powers upon them, could reach the point of legalizing a contract such as that sued on here ; and if this was a new question, we think a simple analysis of the constitutional provision and acts of assembly referred to, would fully sustain the decree below. But, in addition to this, the case of *Gwynn* v. *Gwynn* (27 S. C., 525) is direct authority on the precise point, the court there holding, upon unanswerable reasoning, as I think, presented by Mr. Justice McIver, that a contract of partnership was beyond the range of any powers conferred upon married women.

The special matters of relief prayed for by the appellant in his complaint, and the denial of which by the Circuit Judge is assigned as error in the exceptions, being dependent upon the existence of the copartnership, and that having been adjudged against the appellant, they must fall with said alleged copartnership.

*Alexander* v. *Meroney*, 30 S. C., 335, relied on by appellant, has no application here. The question, whether a married woman could enter into a partnership contract, was neither made nor decided there.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.