## VANNERSON v. CHEATHAM.

1. MARRIED WOMAN—PARTNERSHIP—CASE CRITICISED.—The case of Gwynn *v.* Gwynn, 27 S. C., 525, conclusively determines that a married woman had no power to enter into a contract of partnership under the laws of this State in 1888 and 1889.

2. IBID.—IBID.—A married woman is prevented from entering into a contract of partnership under the power "to bind herself by contract," as declared in the act of 1891 (20 Stat., 1121), by the proviso to that act, "that nothing herein shall enable such married woman to become an accommodation endorser, guarantor, or surety, nor shall she be liable on any promise to pay the debt, or answer for the default or liability of any other person," as by becoming a partner she would thereby become liable for the debts of the partnership. MR. JUSTICE MCGOWAN *dissenting*.

Before WITHERSPOON, J., Edgefield, March, 1893.

This was an action by Vannerson & Fleming against Mattie L. Cheatham and W. J. McKerall, partners in trade under the firm name of Cheatham & McKerall, commenced in October, 1892.

*Mr. N. G. Evans,* for appellant.

*Messrs. Sheppard Bros.,* contra.

April 23, 1894.    The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.    This action was based on an account for goods alleged to have been sold and delivered by the plaintiffs to the defendants as partners in trade, at divers times, from the 16th of February, 1892, to the 11th of May, 1892, both inclusive.    The defendant, McKerall, made default, and judgment was rendered against him for the amount of the account.  But the other defendant, Mrs. Cheatham, answered, alleging that she was a married woman, both at the time the alleged partnership between herself and codefendant, McKerall, purports to have been entered into, and at the time the said account was contracted; that no part of the articles mentioned in the account concerned or affected her separate estate, as was well known to the plaintiffs at the time; and setting up the legal defence that as a married woman she had no power to enter into the alleged contract of partnership, and was, therefore, not bound by any contract of such alleged partnership.

The case was heard by the Circuit Judge, without a jury, by consent, and the facts being admitted—that the alleged partnership between the defendants was entered into some time in the year 1888 or 1889, and continued without renewal or alteration until July, 1892, during all of which time Mrs. Cheatham was a married woman—the only question presented, as to whether she was liable, depended upon the question whether she had the power to enter into such contract of partnership.    The Circuit Judge held that she had no such power, and, therefore, he rendered judgment dismissing the complaint as to Mrs. Cheatham.  From this judgment plaintiffs appeal upon the following

grounds: 1st. Because there was error in deciding that under the proviso to the act of December 23, 1891, a married woman cannot make a contract of partnership, and in further deciding that she thereby becomes liable to pay the debt or answer for the default of some other person.   2d. Because the presiding judge erred in dismissing the complaint as to the defendant, Mattie L. Cheatham.   3d. Because the presiding judge erred in not rendering a judgment in favor of the plaintiffs against the defendant, Mattie L. Cheatham.

The real question raised by these several grounds of appeal is whether a married woman had the power to enter into a contract of partnership with another person, either at the time of the attempted formation of the partnership, in 1888 or 1889, or after the passage of the act of 23d of December, 1891 (20 Stat., 1121), by holding herself out to the world as a partner.   It is conclusively determined by the case of *Gwynn* v. *Gwynn*, 27 S. C., 525, that, up to the time of the passage of the act of 1891, a married woman had no power to enter into a contract of partnership; for it is not, and cannot be, pretended that the intermediate act of 1887 (19 Stat., 819,) has any application to this case.

The inquiry is, therefore, narrowed down to the question, whether such a power is conferred upon a married woman by the terms of the act of 1891, which reads as follows: "A married woman shall have the right to purchase any species of property in her own name, and to take proper legal conveyances therefor, and to bind herself by contract, in the same manner and to the same extent as though she were unmarried, which contracts shall be legal and obligatory, and may be enforced at law or in equity by, or against, such married woman in her own name, apart from her husband: *Provided*, That nothing herein shall enable such married woman to become an accommodation endorser, guarantor, or surety, nor shall she be liable on any promise to pay the debt, or answer for the default or liability of any other person." Now, it is very manifest that the power to enter into a contract of partnership is not conferred by the express terms of the act, and the inquiry is, whether those terms confer the power in ques-

tion by necessary implication. It seems to us that so far from such being the necessary implication from the terms used in the act, the implication necessarily is, that such a power is ·denied to a married woman. While it is quite true that the act does, in general terms, invest a married woman with power to contract, which, if there was nothing more in the act, would imply the power to make any kind of contract, that would otherwise be legal; but the act does contain something more, and that something expressly denies to a married woman the power to make certain kinds of contracts, specified in the first proviso, which may be expressed in general terms as contracts whereby a married woman undertakes to assume a liability for the debt or default of another.

So that the inquiry here is still further narrowed down to the question, whether a contract of partnership falls within any one of the classes specifically designated in the first proviso to the act. That it does, is abundantly apparent from the very nature and effect of a contract of partnership. Passing by the fact, that, in the eye of the law, a partnership and one of the individuals of which it is composed are two distinct and separate persons, and that if a married woman can enter into a contract of partnership, she necessarily becomes liable to pay the debt of another, the power to do which is expressly denied by the act, we think the following cases, cited by counsel for respondent, conclusively show that from the very nature of the contract of partnership and the legal results flowing from such contract, it is just such a contract as a married woman is denied the power to make. In the case of *Hawes* v. *Dunton & White*, 1 Bail., 146, it was held that a mercantile copartnership was liable on a promissory note given for the debt of a third person, and signed in the partnership name by one of the members of the firm without the knowledge of the other member. The same doctrine was recognized in the subsequent cases of *Flemming, Ross & Co.* v. *Prescott, Bishop & Gray*, 3 Rich., 307; *Steel* v. *Jennings & Beatty*, Cheves, 183, and *Duncan* v. *Clark & Co.*, 2 Rich., 587. If, therefore, a married woman has the power to enter into a contract of partnership, and a bill of exchange is drawn by her husband on the partnership to pay a debt of his

own, and the same is accepted in the name of the partnership, she would become liable thereon, although the statute expressly declares that she shall not be liable. And as was said in *Gwynn* v. *Gwynn, supra,* at page 541: "A married woman being thus denied the capacity to assume one of the liabilities necessarily incident to the partnership relation, it would seem to follow, necessarily, that she has no power to form such a relation."

We think it clear, therefore, that there was no error on the part of the Circuit Judge in holding, "that under the proviso to the act of December 23d, 1891, a married woman cannot make a contract of partnership, for she would thereby become liable to pay the debt, or answer for the default or liability of some other person, which, under the provisions of said act, she has no power to do."

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

Mr. Justice McGowan. I dissent. I cannot think that this married woman was either "an accommodation endorser," "guarantor," or "surety," or that she engaged to pay the debt or to answer for the default or liability of another person; and, therefore, under the act of 1891, she had the power to make the contract she did, and she should be held bound thereby.

Judgment affirmed.