McGEE v. CUNNINGHAM.

MORTGAGES.—A MARRIED WOMAN is legally liable under the act of 1891 on a note and mortgage executed by her for money borrowed by her and delivered to her husband and used by him in paying his debt; also on her notes and mortgage given by her in part payment of a debt due by her husband and for which the husband received credit on his debt.

Before DANTZLER, J., Greenville, February, 1904. Modified.

Action by B. M. McGee against Harriet J. Cunningham. From Circuit decree, both parties appeal.

*Messrs Shuman & Muckenfuss,* for plaintiff, cite: *Married woman may pay debt of her husband:* 52 S. C., 513;

55 S. C., 330; 38 S. C., 519. *Her contract is not a promise to pay the debt of another, but is her own debt:* 3 Hill, 41; 1 Speer, 4; 2 McC., 208; 8 Ency., 1 ed., 677. *If married woman entrust papers to her husband for delivery, she is estopped from denying the agency:* 34 S. C., 175; 45 S. C., 651; 35 S. C., 42.

*Messrs. Blythe & Blythe,* for defendant, cite: *The contract is one of suretyship, and under act of 1891, married woman had no power to make it:* 52 S. C., 449; 38 S. C., 519. *As to estoppel of defendant to deny agency of her husband.* 34 S. C., 184; 33 S. C., 233.

July 29, 1904. The opinion of the Court was delivered by

Mr. Chief Justice Pope. The plaintiff sought a judgment against the defendant on two causes of action. It seems that in November, 1895, the defendant executed her three sealed notes, each note for $300, with interest at eight per cent. per annum, which sealed notes the defendant secured by her mortgage of about eighty acres of land lying near the little village of Athens, in the upper part of Greenville County, in said State. On these three notes interest was paid until the 15th November, 1901. No part of principal or interest has been paid since the last named date. Plaintiff seeks to collect this indebtedness and to foreclose his mortgage. This is plaintiff's first cause of action. On the 17th day of January, 1895, the defendant in order to pay her notes to R. L. R. Bentz, which was secured by her mortgage of land, borrowed $525 from Mrs. Elizabeth E. Parker, which debt to Mrs. Parker the defendant secured by her mortgage on the same tract of land she mortgaged to the plaintiff. Some time in the year 1895, Mrs. Elizabeth E. Parker, for full value, assigned her bond and mortgage to the plaintiff. No payments have been made upon this bond and mortgage except the interest thereon up to the 17th Jan-

uary, 1902.   This bond for $525, and the mortgage securing the same, is the second cause of action.

The defendant admits the execution of the notes and bond and the mortgages securing the same, but she seeks to avoid the payment of these several obligations on the ground that she was a married woman at the time she performed all these acts and that her husband owed all these debts, and she was induced by her husband's persuasion to promise to pay the debt or answer for the default or liability of her said husband, which was contrary to law and, therefore, null and void.

On a reference of all the issues of law and fact to the master of Greenville County, said master, after hearing the testimony, reported against the plaintiff on his first cause of action, but on the second cause of action said master reported in favor of the plaintiff, recommending that he have his judgment against the defendant.   Both parties excepted to this report, which came on to be heard before his Honor, Judge Dantzler.   From his decree, wherein he sustained the report of the master, both parties have appealed to this Court.

We will examine the exceptions of the defendant to the decree of Judge Dantzler, so far as they relate to the second cause of action.   The testimony in brief tends to show the following state of facts:  The National Bank of Greenville held a claim of about $4,100 against T. B. Cunningham in the year 1894, and became desirous of having Mr. Cunningham settle the same.   By means of some stock in the Home Standard Fertilizer Company, the said Cunningham paid $3,600 of his said indebtedness, which left only about $500 still due.   Mr. L. W. Parker, as the attorney of R. L. R. Bentz, had $500 for investment, and was willing to lend Mrs. Harriet J. Cunningham that amount on her note and mortgage.   Among the papers he prepared for Mrs. Cunningham to sign was a note, a mortgage and a· letter addressed to him, directing him to pay the $500 so borrowed by Mrs. Cunningham to her husband, T. B. Cunningham.

*as her agent.* All these papers she signed. It is supposed
that at the maturity of the note for $500, to wit: 1st January,
1895, Bentz desired his money. Again, L. W. Parker, Esq.,
was able to assist the party for Mrs. Elizabeth E. Parker, of
Charleston, S. C., had placed in his hands to be loaned out
for her at least the sum of $525. The defendant, Mrs.
Harriet J. Cunningham, borrowed this money, executing her
bond and mortgage to Mrs. E. E. Parker for this $525,
which paid R. L. R. Bentz's note and mortgage. The papers
themselves show this transaction. Hence the act of 1891
(20 Stat. at Large, 1121,) was not involved. This act,
after clothing a married woman with the right to contract
and be contracted with, as if she were unmarried, had this
proviso: *"Provided,* That nothing herein shall enable such
married woman to become an *accommodation indorser, guar-
antor or surety,* nor shall she be *liable on any promise to
pay the debt or answer for the default or liability of any
other person."* The recited facts show that, in this trans-
action, Mrs. Harriet J. Cunningham did not become the
accommodation indorser, guarantor or surety for her hus-
band, nor was there any liability created by her promise to
pay the debt, or answer for the default or liability of her
husband or any one else. If Mrs. Cunningham had agreed
to pay the National Bank of Greenville this $500 due by her
husband, it might have fallen under the statute; or, again, if
her husband, T. B. Cunningham, had given his note to R. L.
R. Bentz, and she had assumed the payment of such note, the
proviso of the statute might have applied. But no such
things existed. These views have been considered in the
cases of *Christensen* v. *Wells et al.,* 52 S. C., 499, 30 S. E.,
611; *Philpot* v. *Cantey,* 52 S. C., 513, 30 S. E., 545; *Ellis* v.
*Cribb,* 55 S. C., 328, 33 S. E., 484. Under these decisions,
the Circuit Judge committed no error, and all the exceptions
of defendant must be overruled.

2. Was the Circuit Judge in error when he found and ad-
judged that the defendant was not legally bound to pay to
the plaintiff the $900, with interest from 1901, secured by

her mortgage of her lands, as hereinbefore stated? To determine this question, a brief recital of the facts may be of assistance in reaching a proper solution of it. Some time prior to June, 1892, Thomas B. Cunningham borrowed the sum of $3,000 from the plaintiff, B. M. McGee, which debt was secured by a warehouse receipt of 105 or 106 bales of cotton belonging to Thomas B. Cunningham. This cotton was insured in the Ætna Insurance Company, and the policy of insurance was duly assigned to B. M. McGee. In the month of June, 1892, the warehouse and its contents were destroyed by fire. After a few months, B. M. McGee and Thomas B. Cunningham brought suit as plaintiffs against the Ætna Insurance Company on the policy the latter had issued to protect the parties from loss by fire. This suit went on from year to year until some time in 1895, at which time B. M. McGee heard for the first time that Thomas B. Cunningham had taken from the warehouse before the fire between forty and fifty bales of his cotton stored therein. Then B. M. McGee called on Thomas B. Cunningham to make good to him the forty or fifty bales of cotton. B. M. McGee stated that the value of the said cotton was $1,500, and that Thomas B. Cunningham must pay that sum of money to be entered as a credit on his said note for $3,000. B. M. McGee demanded that this payment should be made, and if it was not done, he, McGee, would withdraw from the suit against the Ætna Insurance Co. Cunningham did not have the money, but offered to mortgage his land for the amount. This proposition was declined by McGee. But it was finally determined that Cunningham would secure $500 of the $1,500 by a mortgage on some mules, and that, Mrs. Harriet J. Cunningham would give her four notes, aggregating $1,000, to B. M. McGee, securing the payment thereof by a mortgage of eighty acres of her land lying near the village of Athens, in the upper part of Greenville County, in said State, and that such four notes in amount should be credited on the note of T. B. Cunningham to B. M. McGee for $3,000. All these things were done. The $100 note

was paid, leaving the three notes, each for $300, unpaid, although the interest was paid on them until November, 1901. Receipts were always given by Mr. McGee in the name of Mrs. Harriet J. Cunningham. There is one point of difference between the parties as to a fact. It is asserted by Mr. Cunningham that his wife's notes were given for the $1,000 *after the compromise* of the suit of Cunningham and McGee against the Ætna Insurance Company had been made; whereas, on the contrary, Mr. McGee claims that the notes for $1,000 by Mrs. Cunningham and the $500 mortgage of Cunningham himself were executed in November, 1895, more than a year and a half before the compromise was effected. An examination of the testimony shows that the case of Cunningham and McGee against the Ætna Insurance Company was on the docket of the Court of Common Pleas of Greenville until after the spring term, 1897, of said Court. The notes and mortgage of the defendant, Mrs. Cunningham, were dated November, 1895, and there is no claim by any one that they do not bear their true date. Besides all these circumstances, both McGee and B. M. Shuman, Esq., in their testimony, fix April, 1897, as the date of compromise of the lawsuit between Cunningham and McGee on the one side as plaintiffs against the Ætna Fire Insurance Company as defendant. Under these circumstances we have no hesitation in holding that the notes and mortgages executed by the defendant, Mrs. H. J. Cunningham, to B. M. McGee were made a year and a half before the compromise of the lawsuit. This is an important point, for it shows that Mr. McGee is correct in holding that he demanded that the value of the forty or fifty bales taken from the warehouse before the fire, which destroyed the same with its contents, should be paid before the lawsuit progressed a step further, with him as a party plaintiff with T. B. Cunningham. The information just having reached him in November, 1895, that the fire did not destroy forty or fifty bales of the 106 bales of cotton for which they had sued the Ætna Insurance Company, he owed it to himself to correct

the mistake.    No one had the right to take the forty or fifty
bales of cotton from the warehouse without B. M. McGee's
permission; the cotton was pledged to him to partly secure his
debt of $3,000; the remaining cotton which was burned in
the fire which consumed the warehouse in June, 1892, was
not worth $3,000.    If the forty or fifty bales of cotton taken
from the warehouse was only worth $1,500, there would
have been left, $1,500 of his $3,000 debt unsecured except
by the policy of insurance, whatever it would yield.

Now, what is Mrs. Cunningham's attitude to Mr. McGee
as to the $1,000 she endeavored to provide for?    Clearly
the $1,000 she got a credit on her husband's note for $3,000
to McGee was a payment on said note, for it destroyed the
$3,000 note so far as the $1,000 credit thereon indorsed was
concerned.    She was no surety for her husband, she was no
guarantor of any debt of her husband.    She destroyed her
husband's liability to McGee so far as the $1,000 was con-
cerned.    She had the right, if she had had $1,000 in cash, to
have paid the cash on this note, which would have destroyed
so much of her husband's debt to McGee.    If she had the
right to pay the debt of her husband with cash, why should
she not be entitled to pay with her property?    Money is but
property, it is a certain species of property.    Land is a species
of property.    Why, therefore, could she not use her landed
property in the payment of her husband's indebtedness?
Reference is made to the act of 1891.    Here is the text of
the act: The act of 1891; Stat. 20, 1121, is as follows: "A
married woman shall have the right to purchase any species
of property in her own name and to take proper legal con-
veyances therefor, and to bind herself by contract in the
same manner and to the same extent as though she were un-
married, which contract shall be legal and obligatory, and
may be enforced at law or in equity by and against such mar-
ried woman in her own name, apart from her husband: *Pro-
vided,* That nothing herein shall enable such married woman
to become an accommodation indorser, guarantor or surety,

nor shall she be liable on any promise to pay the debt, or answer for the default or liability of any other person."

As was well said by the late Chief Justice McIver, in *Christensen* v. *Wells,* 52 S. C., at page 499, 30 S. E., 611: "It will be observed that under this act a married woman, who is first invested with full and unlimited power 'to bind herself by contract in the same manner and to the same extent as though she was unmarried,' is afterwards in the *proviso* forbidden to make contracts of a certain character, to wit: contracts of suretyship, &c., and contracts by which she assumes a liability for the debt of another. When, therefore, it appears that the contract in question shows on its face that it was made by her, she becomes liable thereon unless she can show that such contract is one of a character that she is forbidden by the *proviso* from making. In other words, the burden of proof is upon her to show that the contract in question is one of such a character as she had no power to make. See Potter's Dwar on Stat., 118-120, as to the scope and effect of a *proviso.* In this respect the present law differs materially from the former law on the subject. Under the act of 1882, a married woman was only invested with power to make contracts of a certain character, to wit: contracts 'as to her separate property,' and hence under that law it was always held that in an action to enforce a contract made by a married woman, the burden of proof was upon the plaintiff, not only to show the execution of the contract, but also that it was of such a character as a married woman was authorized to make, to wit: a contract as to her separate property. Now, however, a married woman, having been invested with general and unlimited power to contract except in certain specified cases, the plaintiff, after having shown the execution of the contract, is under no obligation to go farther and prove negatively that it is not within any of the exceptions mentioned in the *proviso;* but the *onus* is upon the married woman, or those who represent her estate, to show affirmatively that the contract in question falls within some one of the exceptions mentioned in the *proviso.*"

To face the question squarely, it may be suggested that when Mrs. Cunningham agreed to pay $1,000 of the $3,000 debt of her husband, she assumed the payment of the debt of another. This is not a new question in this State, as appears by reference to our decisions in relation to that branch of the statute of frauds, wherein it is provided: "No action shall be brought whereby to charge * * * the defendant upon any special promise to answer for the debt, default, miscarriage of another unless in writing." Code of 1902, section 2652. In *Corbett* v. *Cochran*, 3 Hill L., 4, it is held that the discharge of a debtor is sufficient consideration to support an undertaking by a third party to pay a debt—that such an agreement is an original and not a collateral undertaking. And so, likewise, it is held, that if upon a new consideration and the discharge of the primary debtor, it is original. *Simpson* v. *Nance*, Spear Law, p. 4. In *Boyce* v. *Owens*, 2 McC., 208, the following is said as to the statute of frauds under consideration: "The reason why the promisor is bound, is that the debt becomes his, and the original debt is extinguished; and *being extinguished, is not the debt of another.*"

We might pursue the question at greater length, but it seems to us we have said enough to vindicate our conclusion that the master and Circuit Judge were in error in holding Mrs. Cunningham excused under the terms of the *proviso* of the act of 1891 from paying her obligation to the plaintiff, B. McGee.

The decree of the Circuit Court should have held Mrs. Cunningham liable under, not only the second cause of action, but also under the first cause of action. The Circuit decree must be so modified.

It is the judgment of this Court, that the judgment of the Circuit Court shall be modified as herein required, and the action is remitted to the Circuit Court to carry into effect the conclusions of this Court.