The following is the agreed statement of facts on the submission of this controversy, without action, under the provisions of section 675 of the Code of 1922:
(1) That the petitioners are husband and wife, and resided at the times hereinafter mentioned, and still reside in the city of Spartanburg, county of Spartanburg, State of South Carolina.
(2) That during the year 1923, said petitioners conducted an automobile sales business in the city of Spartanburg, county and State aforesaid, under the following circumstances: The petitioner, Ernest Burwell, made an oral contract before marriage with the petitioner, Faith C. Burwell (who was a daughter of wealthy parents), that if she would marry him he would give her one-half of all his property, including a half interest in the capital invested in his automobile sales business. That upon said understanding and *Page 201 
agreement they were married. That said Ernest Burwell immediately thereafter conveyed to Faith C. Burwell a lot in the city of Spartanburg, on which to build their home, and in compliance with said antenuptial agreement, one-half of the capital invested in his automobile sales business in the city of Spartanburg, was treated as the property of his wife, Faith C. Burwell, and each of said petitioners received one-half of the net earnings of said automobile business, and the petitioner, Faith C. Burwell, during the year 1923, collected as the building progressed and used her part of said earnings in building a home on the lot of land conveyed to her by her husband, Ernest Burwell; same being the home your petitioners now occupy.
(3) That the petitioners filed their income tax returns with respondents, showing the total income of said automobile business, and at the same time filed their separate individual returns, reporting therein one-half each the net income from said automobile business, and paid the tax in accordance with the statements contained in said separate returns.
(4) That prior to the making of said returns, but subsequent to the period for which same were made, said automobile sales business, as heretofore conducted, was duly incorporated under the laws of the State of South Carolina, under the corporate name of Ernest Burwell, Inc. That in consideration of the property belonging to said automobile business being transferred to said corporation, your petitioner, Ernest Burwell, had issued to him, as his interest in said business, 51 per cent of the capital stock, and Faith C. Burwell received for her interest therein 49 per cent of the capital stock in said corporation.
(5) The South Carolina tax commission, in so far as the income from said automobile business is concerned, disallowed the returns made upon the theory that the petitioners were partners for the year 1923, and have charged the entire net income from said automobile business against the petitioner, Ernest Burwell, individually, thereby creating *Page 202 
a greater liability for surtax under the terms of said act than would be the case by division of profits between the petitioners herein, and separate returns for one-half thereof, as more fully shown by Exhibits A[1] and A[2] hereto attached and made a part of this agreed statement of facts. That said commission has notified the petitioners that their separate returns as copartners have been disallowed, and that the entire profits of said automobile business have been charged to the petitioner, Ernest Burwell, and that after giving said Ernest Burwell credit for the taxes paid by both petitioners, an additional tax, by reason of the larger amount of profit liable to said tax, had been assessed against said Ernest Burwell, in the sum of $1,826.85, as shown by Exhibit A[1] hereto attached, and demand for the payment of same has been made upon the said Ernest Burwell. The rulings of the tax commission herein are based upon the provisions of Section 5516, vol. 3, Code of Laws of 1922, and the ruling of the United States Treasury Department hereto attached as Exhibit B, and made a part of this petition. Respondents contend that said ruling of the United States Treasury Department is binding on respondents and petitioners until the legal status of a married woman to contract partnership with her husband is judicially determined by the Courts of this State.
(6) That the settlement of the questions herein presented are of general public interest, not only to petitioners, but to many others of like status now pending before respondents for adjustment and decision. And especially because of the doubt as to the effect and application of article 17, § 9, of the State Constitution for 1895, and Act of 1897 (section 5540, 3 Code of Laws of South Carolina of 1922), as applied to copartnerships between husband and wife, and in view of the ruling of the United States Treasury Department, as shown by Exhibit C hereto attached, it is of urgent public necessity to have a speedy judicial determination of said question, not only for the benefit of petitioners, and many *Page 203 
others in similar status, but also that the respondents, as public officers, may be promptly informed by the Courts of this State of their duty in the premises in the enforcement of said Income Tax Act.
(7) It is agreed by respondents that said additional tax, as above set forth, assessed against the petitioner, Ernest Burwell, will not be enforced by said respondents pending the adjudication of the questions herein involved by the Supreme Court upon this agreed submission of controversy without action.
(8) The remedy desired by the petitioners in this controversy is a writ of injunction by the Supreme Court in its original jurisdiction, permanently restraining the respondents from assessing and enforcing collection from petitioner, Ernest Burwell, of said additional tax of $1,826.85, by reason of disallowing said copartnership, and the separate returns of petitioners as copartners constituting said copartnership, and your petitioners will ever so pray.
 "Exhibit A[1]. "Report on Return No. 82238.
"Name, Ernest Burwell.
"Address, Spartanburg, S.C.
"Period ended Dec. 31, 1923.

Additions (explain below):
 (1) .....................$ 31,567.90
 (4) ..................... $31,567.90
Deductions (explain below):
 (5) .....................$ 433.85
 (5) ..................... $ 433.85
Net (additions) ............ $31,134.05
Net income as shown
 by return as corrected $31,134.05
 ___________
Net income as corrected $62,268.10
 Exemption, $2,000.00 2,000.00
Balance of net income
 *Page 204 

 subject to normal tax 60,268.10 Tax
Balance at 4% .............. 4,000.00 $ 160.00
Balance at 8% .............. 56,268.10 4,501.45
Surtax ..................... 8,097.75
 __________
Total tax (use this line
 for corporation tax at
 12 1/2%) .................. $12,759.20
 ___________
Due State 1/3 .............. $ 4,253.07
Tax paid — E. Burwell
 $1,212.54 — Mrs. Burwell
 $1,213.58 ................. 2,426.12
 ___________
Underpayment ............... $ 1,826.85
Explanation. Int. @ 6% ........
 Total ............. $.........

"(1) Earnings of partnership Ernest Burwell, credited to Mrs. Ernest Burwell disallowed from her returns and placed in return of her husband in accordance with Sol. Memo., 2373 — Vol. III, No. 35, Sept. 1, 1924, Internal Revenue Bulletin.
"(5) Contributions taken by Mrs. Burwell allowed to Mr. Burwell.
O.W. Livingston, Auditor.
 Exhibit A[2]. "Report on Return No. 82237. "Name, Mrs. Ernest Burwell. `Address, Spartanburg, South Carolina. `Period ended Dec. 31, 1923.
Additions (explain below):
 (1) .....................$ 433.85
 (4) ..................... $ 433.85
Deductions (explain below):
 (5) .....................$ 31,567.90
 (8) ..................... $31,567.90
 *Page 205 

Net (additions) ............ 31,134.05
Net income as shown
 by return ................. 31,158.05
 ___________
Net income as corrected $ 24.00
 Exemption ................. None
Balance at 4% .............. None Tax
Balance at 8% .............. None
Tax paid — $1,213.58
 credited on account
 of Ernest Burwell.
Underpayment ............... None

"Explanation: (1) Deduction for contributions taken out to allow on return of husband.
"(5) Earnings of partnership of Ernest Burwell disallowed and placed to credit of husband in accordance with Sol. Memo., 2373 — Internal Revenue Bulletin, Vol. III, No. 35, Sept 1, 1924.
O.W. Livingston, Auditor.
 "Exhibit B. "Section 218 — Partnerships. "Article 331 — Partnerships. Solicitor's Memorandum 2373.
"Under the laws of South Carolina a married woman has no power to enter into a contract of partnership with her husband, and she cannot enter into such a partnership for income tax purposes.
"An opinion is desired as to whether under the laws of South Carolina a husband and wife can enter into a contract of partnership and thereby report the income from the partnership upon their separate federal income tax returns.
"It is elemental that under the common law a married woman could not enter into a contract of partnership with any one, this rule being based upon the incapacity of a married woman to contract for any purpose. Gwynn v.Gwynn, 27 S.C. 526; 4 S.E., 229. The power of a *Page 206 
married woman to enter into a contract of partnership, if it exists at all, must therefore exist by virtue of statutory authority. Practically all of the States have passed the so-called Married Women's Property Acts, removing to a large extent the common-law disabilities of a married woman to contract with others. However, upon the question whether these statutes extending the powers of married women with reference to the making of contracts and the ownership and disposition of separate property confer the power to enter into the relation of a business partnership with the husband, the Courts seem to be at variance. In some jurisdictions, under such a statute, the power of a married woman to enter into a partnership with her husband and incur the usual liabilities arising from such a relation is upheld. Burneyv. Savannah Grocery Co., 98 Ga. 711; 25 S.E., 915; 58 Am. St. Rep., 342. Hoaglin v. Henderson, 119 Iowa, 720;94 N.W., 247; 61 L.R.A., 756; 97 Am. St. Rep., 335.Suau v. Caffe, 122 N.Y., 308; 25 N.E., 488; 9 L.R.A., 593. Under similar statutes other States have upheld her right to enter into a partnership with third persons. Vailv. Winterstein, 94 Mich., 230; 53 N.W., 932; 18 L.R.A., 515; 34 Am. St. Rep., 334. Abbott v. Jackson, 43 Ark. 212. However, by a preponderance of the authorities, even under the broadest statutes, it is held that a married woman has no power to contract a partnership with her husband, or to become a member of a firm in which her husband is a partner, and this is true even in many States in which she may enter into a contract of partnership with third parties.Artman v. Ferguson, 73 Mich., 146; 40 N.W., 907; 2 L.R.A., 343; 16 Am. St. Rep., 572. Haas v. Shaw,91 Ind., 384; 46 Am. Rep., 607. Board of Trade v. Hayden,4 Wn., 263; 30 P. 87; 32 P. 224; 16 L.R.A., 530; 31 Am. St. Rep., 919. Norwood v. Francis, 25 App. D.C., 463.Fuller Fuller v. McHenry, 83 Wis. 573; 53 N.W., 896; 18 L.R.A., 512. Gilkerson-Sloss Commission Co. v. *Page 207 Salinger, 56 Ark. 294; 19 S.W. 747; 16 L.R.A., 526; 35 Am. St. Rep., 105. Vail v. Winterstein, supra.
"In South Carolina there have been several statutes enacted removing the common-law disabilities of a married woman. Under the Act of 1882, which statute provided that a married woman should have the right to contract and be contracted with as to her separate property in the same manner as if unmarried, the South Carolina Supreme Court conclusively determined that a married woman had no power to enter into a contract of partnership with her husband or any one else. Gwynn v. Gwynn, supra. The same Court held under the act of 1891 that a married woman could not enter into a partnership contract. Vannerson v. Cheatham,41 S.C. 327; 19 S.E., 614. The present statute in force in South Carolina is section 3761, Code S.C. 1912. This statute permits a married woman to bind herself by contract in the same manner and to the same extent as though she was unmarried, which contracts are declared to be legal and obligatory and enforceable against such married woman in her own name. It does not appear that the Courts of South Carolina have ruled upon the question at issue under this statute. The statute of 1912, although not identical with, is similar to, the earlier South Carolina statutes, under which the State Supreme Court has ruled, denying the power of a married woman to enter into a contract of partnership. Further, as above pointed out, the majority rule, under the broadest statutes, seems to be that a married woman has no power to enter into a partnership agreement with her husband. Until the Supreme Court of South Carolina has definitely ruled upon this question under the statute now in force, this office holds that under the laws of South Carolina a married woman has no power to enter into a contract of partnership with her husband. It follows, therefore, that she cannot enter into such a partnership for income tax purposes. "Nelson T. Hartson, "Solicitor of Internal Revenue." *Page 208 
December 31, 1924. The opinion of the Court was delivered by
This is a controversy without action, submitted upon an agreed statement of facts which will be set out in the report of the case.
For the purpose of assessing and collecting the State income tax, the tax commission disallowed the returns of the petitioners, who are husband and wife, made upon the theory that they were partners in an automobile business during the year 1923, and charged the entire net income from said business against the petitioner, Ernest Burwell, the husband. That ruling is rested upon two grounds, which will be considered in order: (1) That under the laws of South Carolina the petitioner, Faith C. Burwell, a married woman, was without legal capacity to enter into a contract of partnership with her husband, Ernest Burwell; (2) that the parol promise of the petitioner, Ernest Burwell, in consideration of marriage, to give his future wife one-half of his property, was within the statute of frauds and void, and hence the postnuptial settlement or partnership contract in conformity thereto was voluntary as to creditors, and of no effect.
Upon the first ground assigned respondent's ruling cannot be sustained. We are of the opinion that under the provisions of the present Constitution *Page 209 
(Const. 1895, art. 17, § 9) a married woman has power to enter into a contract of partnership with her husband. In so far as the law of this jurisdiction prior to the Constitution of 1895 is pertinent to the determination of this question, that law is sufficiently disclosed and declared by two of our decisions, which will be briefly reviewed.
In the case of Gwynn v. Gwynn, 27 S.C. 525;4 S.E., 229, decided in 1887, it was held by this Court that under the provisions of the Constitution of 1868 (article 14, § 8), and of Section 2037 of the General Statutes of 1882, a married woman had no power to enter into a contract of partnership with her husband or other person. That conclusion was rested upon premises which, in the language, substantially, of the reporter's syllabus of that case, may be thus stated: (1) That the Constitution of 1868 (article 14, § 8) did not confer upon a married woman, either expressly or impliedly "any general power to contract"; (2) that "while a married woman had, under the Act of 1870, a general and unlimited power to contract, the amendment of 1882 (Gen. Stat. 2037) limited her power to contract at all except `as to her separate property'"; and (3) that "therefore, under this law, a married woman could not enter into a contract of partnership with her husband or other person, for such a relation involves an obligation to contribute one's time and services, which a married woman has no right to control, and a personal liability for debts which she has no power to make, as such debts would arise from partnership contracts which she has no power to make, they not being contracts as to her separate property."
The statute law construed in Gwynn v. Gwynn remained in force until the General Assembly in 1891 passed an act (20 Stat. 1121) which conferred on a married woman the power "to bind herself by contract in the same manner and to the same extent as though she were unmarried," subject to the following proviso: *Page 210 
"Provided, that nothing herein [contained] shall enable such married woman to become an accommodation endorser, guarantor, or surety, nor shall she be liable on any promise to pay the debt or answer for the default or liability of any other person."
In Vannerson v. Cheatham, 41 S.C. 327; 19 S.E., 614, decided in 1893, this Court construed the act of 1891, and held that by force of the proviso above set out a married woman was denied the capacity to assume one of the liabilities necessarily incident to the partnership relation, and hence that she had no power to form or enter into such a relation. That under the law as thus interpreted and declared in the foregoing cases a married woman had no power to enter into a partnership with her husband or other person prior to the adoption of the Constitution of 1895 is not open to question.
But that the position taken in Gwynn v. Gwynn, supra, and in Vannerson v. Cheatham, supra, however soundly grounded in the statutory provisions there considered, is now, and has been since the adoption of the Constitution of 1895, wholly untenable would seem to be sufficiently apparent from a reading of the provisions of Section 9, art. 17, of that Constitution, which Section is as follows:
"The real and personal property of a woman held at the time of her marriage, or that which she may thereafter acquire, either by gift, grant, inheritance, devise or otherwise, shall be her separate property, and shall have all the rights incident to the same to which an unmarried woman or a man is entitled. She shall have the power to contract and be contracted with in the same manner as if she were unmarried."
That the foregoing language of the makers of our organic law very clearly evinces an intent wholly to emancipate a married woman from her common-law disabilities as to property rights and to confer on such married woman the power to contract generally, free from restriction of any *Page 211 
kind, we think is too clear to warrant argumentative discussion. In the case of Green v. Cannady, 77 S.C. 193;57 S.E., 832, the Court, in discussing the question whether a deed executed in 1882 created an estate by the entirety or a tenancy in common, used this language:
"Through many controversies arising under the act of 1882, the Court held that a married woman's right of contract was by that act limited to contracts as to her separate property, but the sweeping provisions of the Constitution of 1895 have unfettered woman as to her right to contract, thus showing the policy of this State in the emancipation of married women from the ancient rules of the common law touching their property rights."
That the effect of these "sweeping provisions of the Constitution of 1895" was to abrogate any statutory restriction upon the power of a married woman to contract would seem to have been accorded due recognition by the General Assembly of this State. See the pertinent statute law as now embodied in sections 5537-5540, Vol. 3, Code 1922. Thus the proviso in the act of 1891 (20 Stat. 1121), prohibiting a married woman from becoming liable on any promise to pay the debt, or answer for the default or liability of any other person, etc., which was made the basis of the decision in Vannerson v. Cheatham, supra, was not carried into the Civil Code of 1902 (Section 2668), and has not since appeared in any codification of the statute law of the State (Civ. Code 1912, § 3761; Volume 3, Code 1922, § 5540).
If the effect of this provision of the Constitution of 1895 was to free a married woman from all the common-law disabilities of coverture as to property rights, and to confer an unlimited power to contract, as we think it was, we know of no valid reason which would justify the Courts in withholding the power or in denying the right of a married woman to enter into a contract of partnership with her husband. Any reason for denying *Page 212 
such right or capacity would apparently have to be grounded in the proposition that by implication "a disability as to business transactions and contracts, springing from the common-law notion of the unity of the husband and wife, still obtains." But when we consider the changes wrought in the common-law status of a married woman by the present Constitution and statutes — "that they withdraw from the husband the ownership, control, disposition and enjoyment of the wife's estate; that the same are secured to her as though she were a feme sole; that the right to her personal services and the fruits of her labor are denied to him and given to her; that her will is freed from the dominion of his as to all property rights; that she may without his consent enter into the closest business relations with third persons" — there would seem to be no room for the legitimate indulgence of that implication. As was said by the Mississippi Court in Toof v. Brewer, 96 Miss., 19; 3 So., 571 (from which case the expressions quoted in the foregoing sentence are taken):
"She [the wife] is one, and the husband is one. Each has the capacity to contract. Both may desire to contract. Partnership is a lawful subject matter of contract, and there is nothing in the law which, either expressly or by necessary implication, forbids them from contracting."
We have been cited to no decisions of this Court, and have found none, which in the light of the provisions of our present Constitution furnishes or suggests any sound reason for a contrary view. See, in that connection, the following decisions, considering in one aspect or another the rights of married women: Witsell v. Charleston, 7 S.C. 88. Rossv. Linder, 12 S.C. 592. Pelzer, Rodgers Co. v. Campbell Co., 15 S.C. 581; 40 Am. Rep., 705. Clinkscalesv. Hall, 15 S.C. 602. Witte v. Wolfe, 16 S.C. 256.Witte v. Clarke, 17 S.C. 313. McLure v. Lancaster, 24 S.C. 273; 58 Am. Rep., 259. Habenicht v. Rawls, 24 S.C. 461; 58 Am. Rep., 268. Aultman Taylor Co. v. *Page 213 Rush, 26 S.C. 517; 2 S.E., 402. Brown v. Thompson,27 S.C. 500; 4 S.E., 345. Brown Bros. v. Prevost, 28 S.C. 123;5 S.E., 274. Aultman Taylor v. Gilbert, 28 S.C. 303;5 S.E., 806. Booker v. Wingo, 29 S.C. 116;7 S.E., 49. Livingston v. Shingler, 30 S.C. 159;8 S.E., 842. Taylor v. Barker, 30 S.C. 238; 9 S.E., 115. Haganv. Hoover, 33 S.C. 219, 11 S.E., 725. Weisiger v. Wood,36 S.C. 424, 15 S.E., 597. Connor v. Edwards, 36 S.C. 563;15 S.E., 706. Christensen v. Wells, 52 S.C. 497;30 S.E., 611. McGee v. Cunningham, 69 S.C. 470;48 S.E., 473. Green v. Canady, 77 S.C. 193; 57 S.E., 832.
While in a number of other jurisdictions, under enabling laws which for various reasons have been construed not to remove all the disabilities of coverture, and not to confer an unlimited power to contract, the right of a married woman to enter into a contract of partnership with her husband has been denied, the views herein announced seem to be in accord with the conclusion reached by all the Courts of other States which have had occasion to determine the question under enabling laws which wholly remove the disabilities of coverture, and confer on married women an unlimited power to contract. Thus the right of a married woman to enter into a partnership agreement with her husband has been upheld in Alabama (Marcrum v. Smith,206 Ala., 466; 91 So., 259; 20 A.L.R., 1303, and cases therein cited), in Georgia (Burney v. Savannah Grocery Co.,98 Ga. 711; 25 S.E., 915; 58 Am. St. Rep., 342), in Illinois (Heyman v. Heyman, 210 Ill., 524; 71 N.E., 591), in Indiana (Anderson v. Citizens' Nat. Bank, 38 Ind. App. 190;76 N.E. 811), in Iowa (Hoaglin v. Henderson,119 Iowa, 720; 94 N.W., 247; 61 L.R.A., 756; 97 Am. St. Rep., 335), in Kentucky (Louisville N.R. Co. v. Alexander, 27 S.W. 981), in Mississippi (Jones v. Jones,99 Miss., 600; 55 So., 361), in Missouri (Dunifer v. Jecko,87 Mo., 282), in New York (Suau v. Caffe,122 N.Y., 308; 25 N.E., 488; 9 L.R.A., 593); and in Vermont *Page 214 
(Lane v. Bishop, 65 Vt., 575; 27 A., 499). See note, collating and reviewing authorities, 20 A.L.R., 1304-1317.
The tax commission's second position — that the partnership agreement was rendered ineffective by reason of the invalidity of the antenuptial contract under the statute of frauds — is, we think, likewise untenable. If after her marriage the petitioner, Faith C. Burwell, had power as a married woman to enter into a contract of partnership with her husband, it would seem to be wholly immaterial, in so far as the tax commission's rights are concerned, whether the agreement made before and in consideration of the marriage was within the statute of frauds and void, or not. The only effect, as we apprehend, of the invalidity of the antenuptial agreement would be to make the postnuptial transfer of property by the husband to the wife for partnership purposes a voluntary transfer or conveyance, subject to attack by creditors to the same extent as any other voluntary transfer of property for the benefit of the wife. Even, however, if it be conceded that the transfer from the husband to the wife was voluntary, the admitted facts do not establish that it was a transfer or conveyance in fraud of the State's rights as a tax creditor or otherwise. No taxes due or accrued at the time of the transfer are involved. Nor does it appear that the transfer was actually made with fraudulent intent to evade the payment of taxes to accrue in the future. In that situation we know of no sound basis in reason or authority for the position that, because a transfer of property not otherwise invalid results in a yield of less taxes from the transferee than would have resulted if the property had remained the property of the transferor, such result of itself should entitle the State to impeach the transfer as fraudulent, and treat it as nonexistent for the purpose of levying taxes.
It is accordingly ordered and decreed that the prayer of the petitioners be granted, and that the respondents be and are hereby restrained from enforcing collection from the *Page 215 
petitioner, Ernest Burwell, of the additional tax claimed by reason of disallowing the partnership return and the separate returns of petitioners as copartners constituting said partnership.
Injunction granted.
MESSRS JUSTICES WATTS, FRASER and COTHRAN concur.
MR. CHIEF JUSTICE GARY did not participate.